# EXHIBIT   B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DB STRUCTURED PRODUCTS, INC.<br><br>     Plaintiff,<br><br>   -against-<br><br>BALTIMORE AMERICAN MORTGAGE<br>CORPORATION, INC.<br><br>     Defendant. | **ECF Case**<br><br>Civ. No. 07 CV 4109 (DLC)<br><br>**PLAINTIFF'S FIRST SET OF<br>REQUESTS FOR ADMISSION** |

Please take notice that, pursuant to Rule 36 of the Federal Rules of Civil Procedure, DB Structured Products, Inc. ("Plaintiff" or "DBSP"), through its attorneys Thacher Proffitt & Wood LLP, hereby requests the defendant, Baltimore American Mortgage Corporation, Inc. ("Defendant"), to admit or deny the truth of the factual statements set forth below.

Please take further notice that, pursuant to Rule 36 of the Federal Rules of Civil Procedure, the truth of the facts set forth below is admitted unless, within 30 days after service of this request, the Defendant serves upon the undersigned a written answer or objection. If you must qualify the answer or deny only part of a request for admission, you must specifically set forth so much of each statement as is true and qualify or deny the remainder.

<u>DEFINITIONS</u>

A. "Agreement" shall mean and refer to the Seller Loan Purchase Agreement dated July 29, 2004 between Plaintiff and Defendant, attached as Exhibit 1 to the Complaint.

B. "Complaint" shall mean Plaintiff's complaint commencing the instant action and filed with the Clerk of the Court for the United States District Court for the Southern District of New York on May 25, 2007.

C. "Loan", "Loans" shall have the same meaning ascribed such terms, whether singular or plural, in the Agreement and the Seller Guide.

D. "Seller Guide" shall mean and refer to the Deutsche Bank Correspondent Lending Seller Guide referred to in paragraph 1 of the Agreement.

<u>ADMISSIONS REQUESTED</u>

1.    Admit that Henry Biegacz executed the Agreement.

2.    Admit that Henry Biegacz was authorized to execute the Agreement on behalf of Defendant.

3.    Admit that the Agreement was a valid and enforceable contract between Defendant and DBSP at the time Defendant sold each of the Loans listed on Exhibit 2 to the Complaint.

4.    Admit that Henry Biegacz executed the Commitment Letter, dated April 25, 2006, attached hereto as Exhibit A (the "April 25th Commitment Letter").

5.    Admit that Henry Biegacz was authorized to execute the April 25th Commitment Letter on behalf of Defendant.

6.    Admit that the April 25th Commitment Letter is a valid and enforceable contract between Defendant and DBSP.

7.    Admit that Henry Biegacz executed the Commitment Letter, dated June 22, 2006, attached hereto as Exhibit B (the "June 22nd Commitment Letter").

8.    Admit that Henry Biegacz was authorized to execute the June 22nd Commitment Letter on behalf of Defendant.

9.    Admit that the June 22nd Commitment Letter is a valid and enforceable contract between Defendant and DBSP.

10.    Admit that DBSP purchased from Defendant each of the Loans listed on Exhibit 2 to DBSP's Complaint.

11.    (a.)    Admit that the first payment due after the Purchase Date (as defined in the Seller Guide) is thirty (30) or more days delinquent for the Loans identified on Exhibit 2 to the Complaint with the following identifying information:

| Loan Number | Borrower Name | Admit | Deny |
|---|---|---|---|
| 112685803 | TORRY, MARRIETT | _____ | _____ |
| 112116919 | WELLS, DAVID | _____ | _____ |

(b.)    Admit that the second payment due after the Purchase Date (as defined in the Seller Guide) is thirty (30) or more days delinquent for the Loans identified on Exhibit 2 to the Complaint with the following identifying information:

| Loan Number | Borrower Name | Admit | Deny |
|---|---|---|---|
| 112685803 | TORRY, MARRIETT | _____ | _____ |
| 112116919 | WELLS, DAVID | _____ | _____ |

(c.)    Admit that the third payment due after the Purchase Date (as defined in the Seller Guide) is thirty (30) or more days delinquent for the Loans identified on Exhibit 2 to the Complaint with the following identifying information:

| Loan Number | Borrower Name | Admit | Deny |
|---|---|---|---|
| 112685803 | TORRY, MARRIETT | _____ | _____ |
| 112116919 | WELLS, DAVID | _____ | _____ |

(d.)    Admit that the fourth payment due after the Purchase Date (as defined in the Seller Guide) is thirty (30) or more days delinquent for the Loans identified on Exhibit 2 to the Complaint with the following identifying information:

| Loan Number | Borrower Name | Admit | Deny |
|---|---|---|---|
| 112685803 | TORRY, MARRIETT | _____ | _____ |
| 112116919 | WELLS, DAVID | _____ | _____ |

12.    (a.) Admit that the first payment due after the Purchase Date (as defined in the Seller Guide) is sixty (60) or more days delinquent for the Loans identified on Exhibit 2 to the Complaint with the following identifying information:

| Loan Number | Borrower Name | Admit | Deny |
|---|---|---|---|
| 111921945 | BUTA, DAVID | _____ | _____ |
| 111921946 | BUTA, DAVID | _____ | _____ |
| 112354618 | GONNELLA, COREY | _____ | _____ |
| 112359361 | GONNELLA, COREY | _____ | _____ |
| 111653509 | HALL, NEIL | _____ | _____ |
| 110576416 | HAWKINS, MICHAEL | _____ | _____ |
| 110813624 | HECTOR, PHYLLIS | _____ | _____ |
| 111177577 | MCINTYRE, EDWARD | _____ | _____ |
| 111774743 | MONROE, DEMETRIA | _____ | _____ |
| 111774744 | MONROE, DEMETRIA | _____ | _____ |
| 112256371 | OGUNREMI, SILIFAT | _____ | _____ |
| 112735608 | ROBINSON, THOMAS | _____ | _____ |
| 112256381 | SMITH, BLOSSOM | _____ | _____ |

(b.)     Admit that the second payment due after the Purchase Date (as defined in the Seller Guide) is sixty (60) or more days delinquent for the Loans identified on Exhibit 2 to the Complaint with the following identifying information:

| Loan Number | Borrower Name | Admit | Deny |
|---|---|---|---|
| 111921945 | BUTA, DAVID | _____ | _____ |
| 111921946 | BUTA, DAVID | _____ | _____ |
| 112354618 | GONNELLA, COREY | _____ | _____ |
| 112359361 | GONNELLA, COREY | _____ | _____ |
| 111653509 | HALL, NEIL | _____ | _____ |
| 110576416 | HAWKINS, MICHAEL | _____ | _____ |
| 110813624 | HECTOR, PHYLLIS | _____ | _____ |
| 111177577 | MCINTYRE, EDWARD | _____ | _____ |
| 111774743 | MONROE, DEMETRIA | _____ | _____ |
| 111774744 | MONROE, DEMETRIA | _____ | _____ |
| 112256371 | OGUNREMI, SILIFAT | _____ | _____ |
| 112735608 | ROBINSON, THOMAS | _____ | _____ |
| 112256381 | SMITH, BLOSSOM | _____ | _____ |

(c.)     Admit that the third payment due after the Purchase Date (as defined in the Seller Guide) is sixty (60) or more days delinquent for the Loans identified on Exhibit 2 to the Complaint with the following identifying information:

| Loan Number | Borrower Name | Admit | Deny |
|---|---|---|---|
| 111921945 | BUTA, DAVID | _____ | _____ |
| 111921946 | BUTA, DAVID | _____ | _____ |
| 112354618 | GONNELLA, COREY | _____ | _____ |
| 112359361 | GONNELLA, COREY | _____ | _____ |
| 111653509 | HALL, NEIL | _____ | _____ |
| 110576416 | HAWKINS, MICHAEL | _____ | _____ |
| 110813624 | HECTOR, PHYLLIS | _____ | _____ |
| 111177577 | MCINTYRE, EDWARD | _____ | _____ |
| 111774743 | MONROE, DEMETRIA | _____ | _____ |
| 111774744 | MONROE, DEMETRIA | _____ | _____ |
| 112256371 | OGUNREMI, SILIFAT | _____ | _____ |
| 112735608 | ROBINSON, THOMAS | _____ | _____ |
| 112256381 | SMITH, BLOSSOM | _____ | _____ |

(d.)     Admit that the fourth payment due after the Purchase Date (as defined in the Seller Guide) is sixty (60) or more days delinquent for the Loans identified on Exhibit 2 to the Complaint with the following identifying information:

| Loan Number | Borrower Name | Admit | Deny |
|---|---|---|---|
| 111921945 | BUTA, DAVID | _____ | _____ |
| 111921946 | BUTA, DAVID | _____ | _____ |

| Loan Number | Borrower Name | Admit | Deny |
|---|---|---|---|
| 112354618 | GONNELLA, COREY | | |
| 112359361 | GONNELLA, COREY | | |
| 111653509 | HALL, NEIL | | |
| 110576416 | HAWKINS, MICHAEL | | |
| 110813624 | HECTOR, PHYLLIS | | |
| 111177577 | MCINTYRE, EDWARD | | |
| 111774743 | MONROE, DEMETRIA | | |
| 111774744 | MONROE, DEMETRIA | | |
| 112256371 | OGUNREMI, SILIFAT | | |
| 112735608 | ROBINSON, THOMAS | | |
| 112256381 | SMITH, BLOSSOM | | |

(Any of the Loans listed in 11(a)-11(d) and 12(a)-12(d) to which Defendant responded "Admit" shall collectively hereinafter be referred to as "Early Payment Default Loans").

13.   Admit that Defendant is obligated to repurchase the Early Payment Default Loans.

14.   Admit that DBSP has demanded that Defendant repurchase the Early Payment Default Loans.

15.   Admit that Defendant has not repurchased any of the Early Payment Default Loans.

Dated: New York, New York
      September 7, 2007

                              THACHER PROFFITT & WOOD LLP

                              By: _____
                                 John P. Doherty
                                 Richard F. Hans
                                 Kerry Ford Cunningham
                                 Brendan E. Zahner
                                 Attorneys for Plaintiff
                                 Two World Financial Center
                                 New York, New York  10281
                                 (212) 912-7400

# EXHIBIT A

DB Structured Products, Inc.
60 Wall Street
New York, New York 10005

April 25, 2006

Baltimore American Mortgage Corporation, Inc.
7484 Candlewood Road
Hanover, MD 21076

Attention: Henry Biegacz

Re:    Purchase of First Lien Adjustable Rate Mortgage
       Loans by DB Structured Products, Inc.

Ladies and Gentlemen:

As confirmation of the transaction entered into on April 25, 2006 (the "Trade Date"), DB Structured Products, Inc. ("DBSP") hereby confirms our agreement to purchase and Baltimore American Mortgage Corporation, Inc. (the "Seller") hereby confirms its agreement to sell, on a mandatory delivery and servicing-released basis, certain first lien, adjustable rate mortgage loans (the "Mortgage Loans"), having an approximate aggregate unpaid principal balance as of the Cut-off Date (herein defined) of $5,826,200 (+0%/-5%), after application of principal payments made on or before the Cut-off Date. The closing will occur on May 16, 2006 (the "Closing Date") and the cut-off date shall be June 1, 2006 (the "Cut-off Date"). In connection with the closing, the Seller shall deliver an assignment and conveyance in the form attached hereto as Exhibit B (the "Assignment & Conveyance") and a security release certification in the form attached hereto as Exhibit C (the "Security Release") to DBSP on or before the Closing Date. The terms and provisions of the agreement for the purchase and sale of the Mortgage Loans are as described below and pursuant to the Deutsche Bank Correspondent Lending Seller Guide (the "Seller's Guide") and the seller loan purchase agreement (as amended, the "Agreement") dated July 29, 2004 between the Seller and DBSP. Capitalized terms used but not otherwise defined herein shall have the respective meanings set forth in the Seller's Guide.

1.    Loan Documents:  At the Seller's expense, the original mortgage notes properly endorsed, mortgages, modification, extension and/or assumption agreements, assignments of mortgage, intervening assignments of mortgage, title insurance policies, mortgage insurance policies and such other documents as set forth in the Seller's Guide (the "Loan Documents") shall be delivered to Wells Fargo Bank, N.A. (the "Custodian"), at least five (5) business days prior to the Closing Date. The Seller and DBSP will each pay the fees and expenses of the Custodian, as incurred by such party.

2.    The Mortgage Loans:  On the Closing Date, the Mortgage Loans shall comply with the characteristics described on Exhibit A hereto.

(a)    High Cost Lending.  No Mortgage Loan is (a) subject to, covered by or in violation of the provisions of the Homeownership and Equity Protection Act of 1994, as amended or (b) a "high cost", "covered", "abusive", "predatory", "home loan", "Oklahoma Section 10" or "high risk" mortgage loan (or a similarly designated loan using different terminology) under any federal, state or local law or any other statute or regulation providing assignee liability to holders of such mortgage loans.

[TPW: NYLEGAL:501291.5] 17988-00339  06/16/2006 12:11 PM

2

(b)  No Adverse Selection.  No selection procedure was used by the Seller that identified the Mortgage Loans as being less desirable or valuable than other comparable mortgage loans in the Seller's portfolio as of the Cut-off Date.

(c)  Early Payment Defaults or Bankruptcy Filing.  The Seller shall repurchase at the Purchase Price (i) all Mortgage Loans that fail to make the first (7/1), second (8/1) or third (9/1) scheduled monthly payment due on such Mortgage Loan or due to DBSP within the calendar month such payment is due or (ii) any Mortgage Loan if during the three calendar months following the Closing Date (a) the related mortgagor shall voluntarily commence any proceeding or file any petition seeking liquidation, reorganization or other relief under any Federal or state bankruptcy, insolvency, receivership or similar law now or hereafter in effect or (b) an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking liquidation, reorganization or other relief in respect of the related mortgagor under any Federal or state bankruptcy, insolvency, receivership or similar law now or hereafter in effect.

(d)  Premium Recapture; Prepayments.  As of the Closing Date, the Seller shall not have received actual or constructive notice that any of the Mortgage Loans will be prepaid-in-full.  For any Mortgage Loans that prepay-in-full within three (3) months of the Closing Date, the Seller shall remit to DBSP the greater of (a) the Premium with respect to such prepaid Mortgage Loan or (b) the amount of any prepayment penalty paid with respect to such Mortgage Loan. With respect to each prepaid Mortgage Loan, the Premium shall be an amount equal to the product of (x) the excess of the purchase price percentage used to determine the Purchase Price over 100%, and (y) the outstanding principal balance actually purchased as of the Closing Date of such prepaid Mortgage Loan.

3.  Purchase Price:  On the Closing Date DBSP shall pay to the Seller an amount equal to the sum of (i) the product of (a) 102.660% and (b) the scheduled principal balance of the Mortgage Loans as of the first day of the month following the month in which the Servicing Transfer Date occurs minus (ii) accrued interest at the mortgage interest rate with respect to such Mortgage Loans from the Closing Date, to but not including, the first day of the month following the month in which the Servicing Transfer Date occurs (the "Purchase Price").  In the event that the weighted average gross coupon of the Mortgage Loans to be purchased on the Closing Date is different than the weighted average gross coupon of the Mortgage Loans identified on Exhibit A, DBSP shall adjust the Purchase Price to be calculated as follows: (x) for each 1.00 basis point (0.01%) that the weighted average gross coupon of the Mortgage Loans increases, the purchase price percentage shall be increased by 1.3 basis points (0.013%), or (ii) for each 1.00 basis point (0.01%) that the weighted average gross coupon of the Mortgage Loans decreases, the purchase price percentage shall be decreased by 2.1 basis points (0.021%); provided, however, that in no event shall the purchase price percentage exceed 102.760%.

DBSP shall be under no obligation to accept anything less than strict compliance with the terms of our agreement and shall not be required to accept delivery of non-complying Mortgage Loans. DBSP shall have no obligation to purchase any Mortgage Loan for which all the Loan Documents with respect to such Mortgage Loans have not been delivered to the Custodian.  In the event that either (i) DBSP elects to accept non-complying Mortgage Loans, (ii) DBSP rejects more than ten percent (10%) of the Mortgage Loans (as a percentage of unpaid principal balance) during due diligence as described in Section 7 below, (iii) any change in the Seller's financial condition prior to the Closing Date might prohibit or materially and adversely affect the Seller's performance or (iv) an appraisal review with respect to a Mortgage Loan identifies that the value of the related mortgaged property varies from the appraised value of the Mortgage Loan provided by the Seller as of the Trade Date, DBSP and the Seller shall adjust the purchase price with respect to all the Mortgage Loans (or in the case of item (iv) the affected Mortgage Loan) to be purchased by DBSP on the Closing Date to a percentage of par agreed to by the Seller and DBSP.  Notwithstanding anything in this commitment letter to the contrary, in the event that the Mortgage Loans do not conform with the criteria set forth on Exhibit A hereto, DBSP shall remove certain Mortgage Loans and/or the Seller shall deliver additional Mortgage Loans to DBSP for purchase, so that the Mortgage

3

Loans purchased by DBSP conform with the criteria set forth on Exhibit A hereto. In the event that DBSP and the Seller cannot agree on a mutually acceptable revised purchase price, or DBSP in its sole discretion determines based on its due diligence as described herein not to purchase the Mortgage Loans, (x) this commitment letter shall be null and void, (y) DBSP shall have no obligation to purchase the Mortgage Loans and shall not be liable for any damages to the Seller and (z) and the Seller shall reimburse all of DBSP's reasonable due diligence costs and expenses.

4.    Servicing of the Mortgage Loans: The Mortgage Loans will be interim serviced by the Seller on an actual/actual basis in accordance with the terms and provisions of the Seller's Guide until July 1, 2006 (the "Servicing Transfer Date") or such other date as is acceptable to DBSP and the Seller for the benefit of DBSP, its designee or assignee.

5.    Representations and Warranties: Under the Agreement and Seller's Guide the Seller will make representations and warranties as of the Closing Date with respect to the Mortgage Loans and will be obligated to repurchase any Mortgage Loan as to which a representation and warranty has been breached, and is not cured. In addition to the representations and warranties set forth in the Seller's Guide, the Seller makes the following representations and warranties with respect to the Mortgage Loans as of the Closing Date:

(a)    LTV or CLTV. At origination, no Mortgage Loan had a LTV greater than 80% and no Mortgage Loan had a CLTV greater than 100%. With respect to any Mortgage Loan that has a loan-to-value ratio of greater than 80%, such Mortgage Loan will be covered by a primary mortgage insurance policy in accordance with the requirements of Fannie Mae and Freddie Mac.

(b)    Credit Score. Each Mortgage Loan has a valid credit score of not less than 620; no credit score obtained by DBSP with respect to a mortgagor shall decline by forty (40) points or greater from the credit score provided by the Seller as of the Trade Date. Furthermore, DBSP will reserve the right to not purchase any Mortgage Loans that re-fico under 620.

(c)    DTI Ratio. Each Mortgage Loan has a debt-to-income ratio of less than or equal to 47.59%.

(d)    Principal Balance. No Mortgage Loan shall have an unpaid principal balance as of the Cut-off Date of greater than $869,000.

(e)    Convertible. None of the Mortgage Loans are convertible

(f)    Property Type. None of the mortgaged properties will be a manufactured, co-op, condohotel, log home geodesic dwelling, or in connection with the construction or rehabilitation of a mortgaged property.

(g)    Massachusetts. No Mortgage Loan originated on or after November 7, 2004 secured by a Mortgaged Property located in the State of Massachusetts is a Refinanced Mortgage Loan.

(h)    Delinquency. All payments due on or before the Cut-off Date will have been paid as of the Closing Date. No payment required under the Mortgage Loan is delinquent nor has any payment under the Mortgage Loan been delinquent at any time since origination. For the purposes of this paragraph, a

4

Mortgage Loan will be deemed to be delinquent if any payment due thereunder was not paid by the mortgagor in the month such payment was due. Each Mortgage Loan has made the May 1, 2006 scheduled payment and the Purchaser will not purchase any Mortgage Loan that has not made such scheduled payment by the Closing Date. Each Mortgage Loan shall make its June 1, 2006 payment and the Seller shall repurchase any Mortgage Loan that has not made such scheduled payment.

The representations and warranties made by the Seller will survive over the life of each Mortgage Loan, notwithstanding any restrictive endorsement on a mortgage note or mortgage assignment, or the extent of any diligence conducted by DBSP or on its behalf. The repurchase price shall be (i) the purchase price percentage used to calculate the Purchase Price, times the unpaid principal balance of the Mortgage Loan so repurchased plus (ii) accrued interest thereon at the mortgage interest rate from the interest paid to date, to but not including, the last day of the month that such repurchase occurs.

6.   Sale or Securitization of Mortgage Loans:  It is contemplated that the Mortgage Loans will either be sold pursuant to a whole loan transfer or pass-through transfer. The Seller agrees to cooperate reasonably with DBSP in any resale or securitization as set forth in the Seller's Guide. During the period in which the Seller is servicing the Mortgage Loans, with respect to any Mortgage Loans that are the subject of a securitization, by March 1 of each calendar year beginning in 2006, an officer of the Seller shall execute and deliver an officer's certificate to DBSP, any master servicer which is master servicing loans in connection with such transaction (a "Master Servicer") and any related depositor (a "Depositor") for the benefit of each such entity and such entity's affiliates and the officers, directors and agents of any such entity and such entity's affiliates, an officer's certificate in the form attached hereto as Exhibit F.

7.   Underwriting; Review of the Mortgage Loan Files:  With respect to each Mortgage Loan, the Seller shall make all documents and instruments, including payment history, relating to each Mortgage Loan, available at the Seller's offices for review during normal business hours prior to the Closing Date, or such other location as DBSP and the Seller shall mutually agree. The Seller will also make available a credit score of each mortgagor provided by Fair, Isaac & Company, Inc. or such other organization providing credit scores at the time of the origination of a Mortgage Loan. DBSP or its designee may review the files and documents relating to each Mortgage Loan prior to the Closing Date. Such underwriting shall not impair or diminish the rights of DBSP or any assignee of DBSP under the Agreement or the Seller's Guide with respect to a breach of representations and warranties contained in the Seller's Guide. At origination, the Mortgage Loans were underwritten according to (i) the Seller's published residential underwriting guidelines, (ii) DBSP's published residential correspondent underwriting guidelines or (iii) the published underwriting guidelines of another lending institution, which the Seller provided to DBSP on or prior to the Trade Date. DBSP may reject any Mortgage Loan which does not conform to such underwriting guidelines.

8.   Mandatory Delivery:  The sale and delivery of all of the Mortgage Loans on the Closing Date is mandatory, it being specifically understood and agreed that each Mortgage Loan is unique and identifiable as of the Trade Date and that an award of money damages would be insufficient to compensate DBSP for the losses and damages incurred by DBSP (including damages to prospective purchasers of the Mortgage Loans) in the event of the Seller's failure to deliver each of the Mortgage Loans or one or more Mortgage Loans otherwise acceptable to DBSP on or before the Closing Date.

9.   Closing Documents:  Prior to the Closing Date, the customary documents and opinions referenced in the Seller's Guide will be executed and delivered by the Seller. Such documents include, but are not limited to, the following: (i) an Assignment & Conveyance in the form attached hereto as Exhibit B; (ii) a Security Release in the form attached hereto as Exhibit C; and (iii) a seller's officer's certificate in the form attached hereto as Exhibit E.

10.   Costs:  Each party shall be responsible for their fees and expenses in connection with this transaction unless explicitly set forth herein. The costs and expenses incurred in connection with the

5

transfer and delivery of the Mortgage Loans, including recording fees, fees for title policy endorsements and continuations shall be paid by the Seller.

11. <u>Confidential Information</u>: This commitment letter shall be kept confidential by DBSP and the Seller unless (i) otherwise agreed to in writing by DBSP and the Seller or (ii) otherwise required by law.

12. <u>Miscellaneous</u>: This commitment letter contains the entire agreement relating to the subject matter hereof between the Seller and DBSP and supersedes any prior oral or written agreement between us. This commitment letter may only be amended by a written document signed by each of us. This commitment letter shall become part of the Agreement and the Seller's Guide. This commitment letter shall be governed in accordance with the laws of the state of New York, without regard to conflict of laws rules.

### [SIGNATURE PAGE FOLLOWS]

Please confirm that the foregoing specifies the terms of our agreement by signing and returning the enclosed copy of this commitment letter by May 8, 2006 to DB Structured Products, Inc., 60 Wall Street, New York, New York 10005, Attention: Peter Principato. DBSP, at its option, may terminate this transaction and have no further obligations in connection with the transaction herein described if the Seller has failed to acknowledge this agreement by such date.

Very truly yours,

DB STRUCTURED PRODUCTS, INC.

By:_____
Name:_____
Title:_____

By:_____
Name:_____
Title:_____

Confirmed and Agreed to:

**BALTIMORE AMERICAN MORTGAGE CORPORATION, INC.**

By:_____
Name:_____
Title:_____

[TPW: NYLEGAL:501291.5] 17988-00339  05/16/2006 02:42 PM

# EXHIBIT A

## MORTGAGE LOAN DATA

# EXHIBIT B

DB Structured Products, Inc.
60 Wall Street
New York, New York 10005

June 22, 2006

Baltimore American Mortgage Corporation, Inc.
7484 Candlewood Road
Hanover, MD 21076

Attention: Henry Biegacz

Re:     Purchase of Fixed Rate Mortgage
Loans by DB Structured Products, Inc.

Ladies and Gentlemen:

As confirmation of the transaction entered into on June 22, 2006 (the "Trade Date"), DB Structured Products, Inc. ("DBSP") hereby confirms our agreement to purchase and Baltimore American Mortgage Corporation, Inc. (the "Seller") hereby confirms its agreement to sell, on a mandatory delivery and servicing-released basis, certain second lien, fixed rate mortgage loans with a weighted average gross coupon of 12.336% (the "Mortgage Loans"), having an approximate aggregate unpaid scheduled principal balance as of the Cut-off Date (herein defined) of $1,512,256.00 (+0%/- 5%), after application of principal payments made on or before the Cut-off Date. The closing will occur on July 21, 2006 (the "Closing Date") and the cut-off date shall be July 1, 2006 (the "Cut-off Date"). In connection with the closing, the Seller shall deliver an assignment and conveyance in the form attached hereto as Exhibit B (the "Assignment & Conveyance") and a security release certification in the form attached hereto as Exhibit C (the "Security Release") to DBSP on or before the Closing Date. The terms and provisions of the agreement for the purchase and sale of the Mortgage Loans are as described below and pursuant to the Deutsche Bank Correspondent Lending Seller Guide (the "Seller's Guide") and the seller loan purchase agreement (as amended, the "Agreement") dated July 29, 2004 between the Seller and DBSP. Capitalized terms used but not otherwise defined herein shall have the respective meanings set forth in the Seller's Guide.

1.     Loan Documents:  At the Seller's expense, the original mortgage notes properly endorsed, mortgages, modification, extension and/or assumption agreements, assignments of mortgage, intervening assignments of mortgage, title insurance policies, mortgage insurance policies and such other documents as set forth in the Seller's Guide (the "Loan Documents") shall be delivered to Wells Fargo Bank, N.A. (the "Custodian"), at least five (5) business days prior to the Closing Date. The Seller and DBSP will each pay the fees and expenses of the Custodian, as incurred by such party.

2.     The Mortgage Loans:  On the Closing Date, the Mortgage Loans shall comply with the characteristics described on Exhibit A hereto.

(a)     High Cost Lending.  No Mortgage Loan is (a) subject to, covered by or in violation of the provisions of the Homeownership and Equity Protection Act of 1994, as amended or (b) a "high cost", "covered", "abusive", "predatory", "home loan", "Oklahoma Section 10" or "high risk" mortgage loan (or a similarly designated loan using different terminology) under any federal, state or local law or any other statute or regulation providing assignee liability to holders of such mortgage loans.

2

(b)   No Adverse Selection.  No selection procedure was used by the Seller that identified the Mortgage Loans as being less desirable or valuable than other comparable mortgage loans in the Seller's portfolio as of the Cut-off Date.

(c)   Early Payment Defaults or Bankruptcy Filing.  The Seller shall repurchase at the Purchase Price (i) all Mortgage Loans that fail to make the first (8/1), second (9/1) or third (10/1) scheduled monthly payment due on such Mortgage Loan, due to the Seller or due to DBSP within the calendar month such payment is due or (ii) any Mortgage Loan if during the three calendar months following the Closing Date (a) the related mortgagor shall voluntarily commence any proceeding or file any petition seeking liquidation, reorganization or other relief under any Federal or state bankruptcy, insolvency, receivership or similar law now or hereafter in effect or (b) an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking liquidation, reorganization or other relief in respect of the related mortgagor under any Federal or state bankruptcy, insolvency, receivership or similar law now or hereafter in effect.  To the extent that DBSP purchases Mortgage Loans that have not made the July 1, 2006 scheduled monthly payment as of the Closing Date, the Seller shall repurchase at the Repurchase Price (as defined below), all Mortgage Loans that fail to make either the July 1, 2006 scheduled monthly payment, August 1, 2006 scheduled monthly payment, the September 1, 2006 scheduled monthly payment, or the October 1, 2006 scheduled monthly payment due on such Mortgage Loan within the calendar month such payment is due.

3.   Purchase Price:  On the Closing Date DBSP shall pay to the Seller an amount equal to the sum of (i) the product of (a) 99.00% and (b) the scheduled principal balance of the Mortgage Loans as of the first day of the month following the month in which the Servicing Transfer Date occurs minus (ii) accrued interest at the mortgage interest rate with respect to such Mortgage Loans from the Closing Date, to but not including, the first day of the month following the month in which the Servicing Transfer Date occurs (the "Purchase Price").  In the event that the weighted average gross coupon of the Mortgage Loans to be purchased on the Closing Date is different than the weighted average gross coupon of the Mortgage Loans identified on Exhibit A, DBSP shall adjust the Purchase Price to be calculated as follows: (x) for each 1.00 basis point (0.01%) that the weighted average gross coupon of the Mortgage Loans increases, the purchase price percentage shall be increased by 1.30 basis points (0.0130%), or (ii) for each 1.00 basis point (0.01%) that the weighted average gross coupon of the Mortgage Loans decreases, the purchase price percentage shall be decreased by 2.10 basis points (0.0210%); provided, however, that in no event shall the purchase price percentage exceed 99.10%.

DBSP shall be under no obligation to accept anything less than strict compliance with the terms of our agreement and shall not be required to accept delivery of non-complying Mortgage Loans. DBSP shall have no obligation to purchase any Mortgage Loans for which all the Loan Documents with respect to such Mortgage Loans have not been delivered to the Custodian.  In the event that either (i) DBSP elects to accept non-complying Mortgage Loans, (ii) DBSP rejects more than ten percent (10%) of the Mortgage Loans during due diligence as described in Section 7 below or (iii) any change in the Seller's financial statements prior to the Closing Date might prohibit or materially and adversely affect the Seller's performance, DBSP and the Seller shall adjust the purchase price with respect to all the Mortgage Loans to be purchased by DBSP on the Closing Date to a percentage of par agreed to by the Seller and DBSP. Notwithstanding anything in this commitment letter to the contrary, in the event that the Mortgage Loans do not conform with the criteria set forth on Exhibit A hereto, DBSP shall remove certain Mortgage Loans and/or the Seller shall deliver additional Mortgage Loans to DBSP for purchase, so that the Mortgage Loans purchased by DBSP conform with the criteria set forth on Exhibit A hereto.  In the event that DBSP and the Seller cannot agree on a mutually acceptable revised purchase price, or DBSP in its sole discretion determines based on its due diligence as described herein not to purchase the Mortgage Loans, this commitment letter shall be null and void and DBSP shall have no obligation to purchase the Mortgage Loans and shall not be liable for any damages to the Seller.

3

4.    Servicing of the Mortgage Loans:  The Mortgage Loans will be interim serviced by the Seller on an actual/actual basis in accordance with the terms and provisions of the Seller's Guide until September 1, 2006 (the "Servicing Transfer Date") or such other date as is acceptable to DBSP and the Seller for the benefit of DBSP, its designee or assignee.

5.    Representations and Warranties:  Under the Agreement and Seller's Guide the Seller will make representations and warranties as of the Closing Date with respect to the Mortgage Loans and will be obligated to repurchase any Mortgage Loan as to which a representation and warranty has been breached, and is not cured.  In addition to the representations and warranties set forth in the Seller's Guide, the Seller makes the following representations and warranties with respect to the Mortgage Loans as of the Closing Date:

(a)    LTV or CLTV:  At origination, no Mortgage Loan had a LTV greater than 100% and no Mortgage Loan had a CLTV greater than 100%.

(b)    Credit Score:  Each Mortgage Loan has a credit score at origination of not less than 609.

(c)    Debt-to-Income Ratio:  Unless previously disclosed by the Seller to and accepted by DBSP, each Mortgage Loan has a debt-to-income ratio of less than or equal to 50.02%.

(d)    Principal Balance:  No Mortgage Loan shall have an unpaid principal balance as of the Cut-off Date of greater than $133,000 or less than $15,000.

(e)    Convertible:  No Mortgage Loan is a convertible mortgage loan.

(f)    Delinquency:  All payments due on or before the Cut-off Date will have been paid as of the Closing Date.  No payment required under the Mortgage Loan is delinquent nor has any payment under the Mortgage Loan been delinquent at any time since origination.  For the purposes of this paragraph, a Mortgage Loan will be deemed to be delinquent if any payment due thereunder was not paid by the mortgagor in the month such payment was due.  Each Mortgage Loan has made the July 1, 2006 scheduled payment and the Purchaser will not purchase any Mortgage Loan that has not made such scheduled payment by the Closing Date.

(g)    Ground Leases:  No Mortgage Loan is secured in whole or in part by the interest of the Mortgagor as a lessee under a ground lease of the related Mortgaged Property.

(h)    No Neg Am or Option ARM First Lien.  With respect to each second lien Mortgage Loan there is no first lien mortgage loan with respect to the same mortgaged property that permits negative amortization or that is an adjustable rate option mortgage loan.

(i)    Appraisals:  The mortgage file contains an appraisal of the related Mortgaged Property which was on appraisal form 1004 or form 2055 with an interior inspection was made and signed, prior to the funding of the Mortgage Loan, by a qualified appraiser, duly appointed by the Seller, who had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof, whose compensation is not affected by the approval or disapproval of the Mortgage Loan and who met the minimum qualifications of prudent lenders in the secondary market.  Each appraisal of the Mortgage Loan was made in accordance with the relevant provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

4

      (j)   <u>Property Type</u>:  No Mortgage Loan was made in connection with the construction or rehabilitation of a mortgaged property. No Mortgage Loan is secured by a leasehold, co-op, manufactured housing, a mobile home, a condo-hotel, a commercial property, an agricultural property or a mixed use property. No mortgaged property is vacant land.

      (k)   <u>Hurricanes & Tornados</u>:  No Mortgage Loan is secured by a Mortgaged Property located in an area identified by the Federal Emergency Management Agency to be an area affected by any Hurricane or Tornado. This includes areas affected be Hurricanes Katrina, Rita and Wilma and the November 2005 Tornado in the Midwest.

The representations and warranties made by the Seller will survive over the life of each Mortgage Loan, notwithstanding any restrictive endorsement on a mortgage note or mortgage assignment, or the extent of any diligence conducted by DBSP or on its behalf. With respect to any Mortgage Loan originated on or after November 7, 2004 which is secured by a Mortgaged Property located in the State of Massachusetts that is a refinanced Mortgage Loan, (a) if the related mortgagor alleges any violation of the mortgage loan refinance requirements of the State of Massachusetts or (b) any such Mortgage Loans cannot be included in a securitization as a result of any regulatory, predatory or high cost concerns, the Seller shall repurchase such Mortgage Loan no later than five (5) business days following DBSP's request for repurchase. DBSP and the Seller agree that there shall be no requirement that any violations alleged by a mortgagor as set forth in clause (a) above have any merit or demonstrate any validity prior to the Seller's obligation to repurchase such Mortgage Loan. The Seller shall also indemnify DBSP as required pursuant to the Agreement to the extent that any of the events set forth in clauses (a) or (b) occur. The repurchase price shall be (i) the purchase price percentage used to calculate the Purchase Price, times the unpaid principal balance of the Mortgage Loan so repurchased plus (ii) accrued interest thereon at the mortgage interest rate from the interest paid to date, to but not including, the last day of the month that such repurchase occurs (the "Repurchase Price").

      6.   <u>Sale or Securitization of Mortgage Loans</u>:  It is contemplated that the Mortgage Loans will either be sold pursuant to a whole loan transfer or pass-through transfer. The Seller agrees to cooperate reasonably with DBSP in any resale or securitization as set forth in the Seller's Guide.

      7.   <u>Underwriting; Review of the Mortgage Loan Files</u>:  With respect to each Mortgage Loan, the Seller shall make all documents and instruments, including payment history, relating to each Mortgage Loan, available at the Seller's offices for review during normal business hours prior to the Closing Date, or such other location as DBSP and the Seller shall mutually agree. The Seller will also make available a credit score of each mortgagor provided by Fair, Isaac & Company, Inc. or such other organization providing credit scores at the time of the origination of a Mortgage Loan. DBSP or its designee may review the files and documents relating to each Mortgage Loan prior to the Closing Date. DBSP may review up to 100% of the Mortgage Loans for credit and compliance and may conduct AVMs on up to 100% of the loans. Moreover, DBSP may "re-FICO" up to 100% of the Mortgage Loans using either the "hard-hit" or the "soft-hit" methodology. If the "hard-hit" methodology is used, DBSP shall use the middle of three FICO scores and if the "soft-hit" methodology is used, DBSP shall use the lower of two FICO scores. To the extent DBSP re-FICOs a Mortgage Loan and the new FICO score is under 560 or lower by an amount of forty (40) or more points, DBSP reserves the right to reject such Mortgage Loan. Such underwriting shall not impair or diminish the rights of DBSP or any assignee of DBSP under the Agreement with respect to a breach of representations and warranties contained in the Agreement. At origination, the Mortgage Loans were underwritten according to the Seller's published residential underwriting guidelines which the Seller provided to DBSP on or prior to the Trade Date. DBSP may reject any Mortgage Loan which does not conform to such underwriting guidelines.

5

8. <u>Mandatory Delivery</u>: The sale and delivery of all of the Mortgage Loans on the Closing Date is mandatory, it being specifically understood and agreed that each Mortgage Loan is unique and identifiable as of the Trade Date and that an award of money damages would be insufficient to compensate DBSP for the losses and damages incurred by DBSP (including damages to prospective purchasers of the Mortgage Loans) in the event of the Seller's failure to deliver each of the Mortgage Loans or one or more Mortgage Loans otherwise acceptable to DBSP on or before the Closing Date.

9. <u>Closing Documents</u>: Prior to the Closing Date, the customary documents and opinions referenced in the Seller's Guide will be executed and delivered by the Seller. Such documents include, but are not limited to, the following: (i) an Assignment & Conveyance in the form attached hereto as <u>Exhibit B</u> and (ii) a Security Release in the form attached hereto as <u>Exhibit C</u>.

10. <u>Costs</u>: Each party shall be responsible for their fees and expenses in connection with this transaction unless explicitly set forth herein. The costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, including recording fees, fees for title policy endorsements and continuations shall be paid by the Seller.

11. <u>Confidential Information</u>: This commitment letter shall be kept confidential by DBSP and the Seller unless (i) otherwise agreed to in writing by DBSP and the Seller or (ii) otherwise required by law.

12. <u>Miscellaneous</u>: This commitment letter contains the entire agreement relating to the subject matter hereof between the Seller and DBSP and supersedes any prior oral or written agreement between us. This commitment letter may only be amended by a written document signed by each of us. This commitment letter shall become part of the Agreement and the Seller's Guide. This commitment letter shall be governed in accordance with the laws of the state of New York, without regard to conflict of laws rules.

[SIGNATURE PAGE FOLLOWS]

Please confirm that the foregoing specifies the terms of our agreement by signing and returning the enclosed copy of this commitment letter by July 3, 2006 to DB Structured Products, Inc., 60 Wall Street, New York, New York 10005, Attention: Julianna Spencer. DBSP, at its option, may terminate this transaction and have no further obligations in connection with the transaction herein described if the Seller has failed to acknowledge this agreement by such date.

Very truly yours,

DB STRUCTURED PRODUCTS, INC.

By: _____
Name: Michael Commaroto
Title: Managing Director

By: _____
Name: PETER PRINCIPATO
Title: AUTHORIZED SIGNATORY

Confirmed and Agreed to:

BALTIMORE AMERICAN MORTGAGE
CORPORATION, INC.

By: _____
Name: _____
Title: _____

Please confirm that the foregoing specifies the terms of our agreement by signing and returning the enclosed copy of this commitment letter by July 3, 2006 to DB Structured Products, Inc., 60 Wall Street, New York, New York 10005, Attention: Julianna Spencer. DBSP, at its option, may terminate this transaction and have no further obligations in connection with the transaction herein described if the Seller has failed to acknowledge this agreement by such date.

Very truly yours,

DB STRUCTURED PRODUCTS, INC.

By:_____
Name:_____
Title:_____

By:_____
Name:_____
Title:_____

Confirmed and Agreed to:

BALTIMORE AMERICAN MORTGAGE
CORPORATION, INC.

By:_____
Name:_____
Title:_____

EXHIBIT A

MORTGAGE LOAN DATA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DB STRUCTURED·PRODUCTS, INC.,                    Docket No. 07 Civ 4109

                       Plaintiff,

    against

BALTIMORE AMERICAN MORTGAGE
CORPORATION, INC.

                   Defendant.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## FIRST SET OF REQUESTS FOR ADMISSION

Defendant, for its Responses to Plaintiff's First Set of Requests for Admission,

hereby responds as follows:

    1. Admit.

    2. Admit.

    3. Admit.

    4. Admit.

    5. Admit.

    6. Admit.

    7. Admit.

    8. Admit.

    9. Admit.

    10. Admit.

1

11.

    (a)  Admit.

    (b)  Admit.

    (c) Admit.

    (d) Admit.

12.

    (a) Admit.

    (b) Admit.

    (c) Admit.

    (d) Admit.

13.  Defendant cannot admit the request.  The request calls for a conclusion of law (rather than a statement of fact or an application of law to fact).  Notwithstanding such objection, defendant admits that the Agreements (as defined in the Complaint), in part, governs the obligations of the parties. Defendant states that defendant's obligation, if any, was modified by the plaintiff's failure to comply with its obligation, including, but not limited to, its obligation to timely notify the defendant so as to avoid and mitigate any alleged damages, the failure of the plaintiff in contacting the relevant mortgagors and attempting to effectuate a work-out, and the failure of the plaintiff in monitoring the relevant mortgagors' status.  Plaintiff's actions (or inactions) were different with respect to each Early Payment Default Loan.  Since the request did not request an admission for each loan specifically, no specific response is given herein with respect to each loan.

14.  Admit.

2

15.  Admit.

Dated:      Fishkill, New York
            October 24, 2007

Warren Wynshaw, Esq.
(WW-3122)
Warren Wynshaw, P. C.
2 Summit Court, #302
Fishkill, New York 12524
845-896-3100
        Attorney for Defendant

3