

# Bulk Whole Loan Transfers for DB-ASAP, DB-ALT & DB-SUB

Pursuant to the terms and conditions set forth herein under this chapter entitled "Bulk Whole Loan Transfers", the Seller may sell, from time to time, to DB Structured Products, Inc. Bulk Mortgage Loans on a servicing released basis and which shall be delivered in groups of whole loans on various dates and having an aggregate principal balance on the related Cut-off Date in an amount as set forth in the related Bulk Commitment Letter, or in such other amount as agreed to by DB Structured Products, Inc. and the Seller as evidenced by the actual aggregate principal balance of the Bulk Mortgage Loans accepted by DB Structured Products, Inc. on the related Closing Date as provided in the related Bulk Commitment Letter.

Following its purchase of the Bulk Mortgage Loans from the Seller, DB Structured Products, Inc. may sell some or all of the Bulk Mortgage Loans to one or more purchasers as a whole loan transfer in a whole loan or participation format or a public or private mortgage-backed securities transaction.

Deutsche Bank

# General Provisions

This section provides the general mechanics and additional obligations of the Seller with respect to the sale of Bulk Mortgage Loans to DB Structured Products, Inc.

## Bulk Mortgage Loan Schedule

The Seller shall deliver the Bulk Mortgage Loan Schedule for a Bulk Mortgage Loan Package to be purchased on a particular Closing Date to DB Structured Products, Inc. at least three (3) Business Days prior to the related Closing Date or as otherwise set forth in the related Bulk Commitment Letter.

## Bulk Purchase Price

With respect to each Bulk Whole Loan Transfer, the Bulk Purchase Price for each Bulk Mortgage Loan listed on the related Bulk Mortgage Loan Schedule shall be the percentage of par as stated in the related Bulk Commitment Letter (subject to adjustment as provided therein), multiplied by its Stated Principal Balance as of the related Cut-off Date. Portions of the Bulk Mortgage Loans, if provided in the related Bulk Commitment Letter, shall be priced separately.

DB Structured Products, Inc. shall own and be entitled to receive with respect to each Bulk Mortgage Loan purchased, (1) all recoveries of principal collected after the related Cut-off Date and (2) all payments of interest on the Bulk Mortgage Loans net of the Servicing Fee (minus that portion of any such interest payment that is allocable to the period prior to the related Cut-off Date). All payments of principal and interest, less the applicable Servicing Fee, due on a Due Date following the related Cut-off Date shall belong to DB Structured Products, Inc.

## Conveyance of the Bulk Mortgage Loans

The Seller, simultaneously with the payment of the Bulk Purchase Price, shall execute and deliver to DB Structured Products, Inc. an Assignment and Conveyance with respect to the related Bulk Mortgage Loan Package in the form attached to the related Bulk Commitment Letter. The Servicing File retained by the Seller until the Servicing Transfer Date with respect to each Bulk Mortgage Loan shall be appropriately identified in the Seller's computer system to reflect clearly the sale of such Bulk Mortgage Loan to DB Structured Products, Inc. The Seller shall release from its custody the contents of any Servicing File retained by it only in accordance with the terms and conditions set forth herein under this section entitled "Bulk Whole Loan Transfers".

## Delivery And Examination of the Bulk Mortgage Loan Documents

In connection with each Closing Date, at least five (5) Business Days prior to such Closing Date, the Seller shall deliver and release to the Bulk Custodian the Bulk Mortgage Loan Documents (defined below) with respect to each Bulk Mortgage Loan set forth on the related Bulk Mortgage Loan Schedule delivered with such Bulk Mortgage Loan Documents.

In addition to the rights granted to DB Structured Products, Inc. under the related Bulk Commitment Letter to underwrite the Bulk Mortgage Loans and review the Mortgage Files prior to the related Closing Date, DB Structured Products, Inc. may examine the related Mortgage File, including the Assignment of Mortgage, pertaining to each Bulk Mortgage Loan. Such examination may be made by DB Structured Products, Inc. or its designee at any reasonable time before or after the related Closing Date. If DB Structured Products, Inc. makes such examination prior to the related Closing Date and identifies any Bulk Mortgage Loans that do not conform to the terms of the related Bulk Commitment Letter or Underwriting Guidelines, such Bulk Mortgage Loans may, at DB Structured Products, Inc.'s option, be rejected for purchase. If not purchased by DB Structured Products, Inc., such Bulk Mortgage Loans shall be deleted from the related Bulk Mortgage Loan Schedule. DB Structured Products, Inc. may, at its option and without notice to the Seller, purchase all or part of any Bulk Mortgage Loan Package without conducting any partial or complete examination. The fact that DB Structured Products, Inc. has conducted or has determined not to conduct any partial or complete examination of the Mortgage Files shall not affect DB Structured Products, Inc.'s (or any of its successors') rights to demand repurchase or other relief or remedy provided hereunder.

DB Structured Products, Inc. shall have the opportunity to conduct a corporate due diligence of the Seller, including but not limited to, on site review of the Seller's facilities and discussions with the Seller's management. DB Structured Products, Inc. may conduct such review prior to or following the related Closing Date. In addition, DB Structured Products, Inc. may perform additional reviews as DB Structured Products, Inc., in its sole discretion, deems necessary.

The Bulk Custodian shall certify its receipt of all such Bulk Mortgage Loan Documents required to be delivered pursuant to the Bulk Custodial Agreement for the related Closing Date, as evidenced by the Trust Receipt and Initial Certification of the Bulk Custodian in the form annexed to the Bulk Custodial Agreement. The Seller shall be responsible for maintaining the Bulk Custodial Agreement during the Interim Servicing Period. The fees and expenses of the Bulk Custodian shall be paid by DB Structured Products, Inc. and the Seller as set forth in the related Bulk Commitment Letter.

With respect to each Bulk Mortgage Loan set forth on a related Bulk Mortgage Loan Schedule, the following documents shall constitute the mortgage loan documents (the "Bulk Mortgage Loan Documents"):

Chapter 2—Bulk Whole Loan Transfers for DB-ASAP, DB-ALT & DB-SUB

**General Provisions**

1. The original Mortgage Note bearing all intervening endorsements necessary to show a complete chain of endorsements from the original payee to the Seller, endorsed in blank, "Pay to the order of _____, without recourse", and, if previously endorsed, signed in the name of the last endorsee by a duly qualified officer of the last endorsee. If the Bulk Mortgage Loan was acquired by the last endorsee in a merger, the endorsement must be by "[name of last endorsee], successor by merger to [name of predecessor]". If the Bulk Mortgage Loan was acquired or originated by the last endorsee while doing business under another name, the endorsement must be by "[name of last endorsee], formerly known as [previous name]";

   If the Seller uses facsimile signatures to endorse Mortgage Notes, the Seller must provide in an Officer's Certificate that the endorsement is valid and enforceable in the jurisdiction(s) in which the Mortgaged Properties are located and must retain in its corporate records the following specific documentation authorizing the use of facsimile signatures: (i) a resolution from its board of directors authorizing specific officers to use facsimile signatures; stating that facsimile signatures will be a valid and binding act on the Seller's part; and authorizing the Seller's corporate secretary to certify the validity of the resolution, the names of the officers authorized to execute documents by using facsimile signatures, and the authenticity of specimen forms of facsimile signatures; (ii) the corporate secretary's certification of the authenticity and validity of the board of directors' resolution; and (iii) a notarized "certification of facsimile signature," which includes both the facsimile and the original signatures of the signing officer(s) and each officer's certification that the facsimile is a true and correct copy of his or her original signature.

2. In the case of a Bulk Mortgage Loan that is not a MERS Loan, the original Assignment of Mortgage for each Bulk Mortgage Loan, in form and substance acceptable for recording. The Security Instrument shall be assigned, with assignee's name left blank. If the Bulk Mortgage Loan was acquired by the last assignee in a merger, the Assignment of Mortgage must be made by "[name of last assignee], successor by merger to [name of predecessor]". If the Bulk Mortgage Loan was acquired or originated by the last assignee while doing business under another name, the Assignment of Mortgage must be by "[name of last assignee], formerly known as [previous name]";

3. The original of any guarantee executed in connection with the Mortgage Note, if any;

4. For each Bulk Mortgage Loan that is not a MERS Loan, the original Security Instrument with evidence of recording thereon or, if the original Security Instrument with evidence of recording thereon has not been returned by the public recording office where such Security Instrument has been delivered for recordation or such Security Instrument has been lost or such

public recording office retains the original recorded Security Instrument, a photocopy of such Security Instrument, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the title insurer insuring the Security Instrument stating that such Security Instrument has been delivered to the appropriate public recording office for recordation and that the original recorded Security Instrument or a copy of such Security Instrument certified by such public recording office to be a true and complete copy of the original recorded Security Instrument will be promptly delivered to the Bulk Custodian upon receipt thereof by the party delivering the Officer's Certificate or by the Seller; or (ii) in the case of a Security Instrument where a public recording office retains the original recorded Security Instrument or in the case where a Security Instrument is lost after recordation in a public recording office, a copy of such Security Instrument with the recording information thereon certified by such public recording office to be a true and complete copy of the original recorded Security Instrument;

5.  For each Bulk Mortgage Loan that is a MERS Loan, the original Security Instrument, noting the presence of the MIN of the Bulk Mortgage Loan and either language indicating that the Bulk Mortgage Loan is a MOM Loan or if the Bulk Mortgage Loan was not a MOM Loan at origination, the original Security Instrument and the assignment thereof to MERS, with evidence of recording indicated thereon, or a copy of the Security Instrument certified by the public recording office in which such Security Instrument has been recorded;

6.  The originals of all assumption, modification, consolidation or extension agreements, with evidence of recording thereon, if any;

7.  The originals of all intervening assignments of mortgage with evidence of recording thereon evidencing a complete chain of ownership from the originator of the Bulk Mortgage Loan to the last assignee, or if any such intervening assignment of mortgage has not been returned from the applicable public recording office or has been lost or if such public recording office retains the original recorded intervening assignments of mortgage, a photocopy of such intervening assignment of mortgage, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the title insurer insuring the Security Instrument stating that such intervening assignment of mortgage has been delivered to the appropriate public recording office for recordation and that such original recorded intervening assignment of mortgage or a copy of such intervening assignment of mortgage certified by the appropriate public recording office to be a true and complete copy of the original recorded intervening assignment of mortgage will be promptly delivered to the Bulk Custodian upon receipt thereof by the party delivering the Officer's Certificate or by the Seller; or (ii) in the case of an intervening assignment of mortgage where a public recording

Deutsche Bank

Chapter 2—Bulk Whole Loan Transfers for DB-ASAP, DB-ALT & DB-SUB

General Provisions

office retains the original recorded intervening assignment of mortgage or in the case where an intervening assignment of mortgage is lost after recordation in a public recording office, a copy of such intervening assignment of mortgage with recording information thereon certified by such public recording office to be a true and complete copy of the original recorded intervening assignment of mortgage;

8. If the Mortgage Note, the Security Instrument, any Assignment of Mortgage, or any other related document has been signed by a Person on behalf of the Mortgagor, the original power of attorney or other instrument that authorized and empowered such Person to sign;

9. The original lender's title insurance policy in the form of an ALTA mortgage title insurance policy, containing each of the endorsements required by FNMA and insuring DB Structured Products, Inc. and its successors and assigns as to the first or second priority lien of the Security Instrument in the original principal amount of the Bulk Mortgage Loan or, if the original lender's title insurance policy has not been issued, the irrevocable commitment to issue the same; and

10. The original of any security agreement, chattel mortgage or equivalent document executed in connection with the Security Instrument, if any.

The Seller shall forward to the Bulk Custodian original documents evidencing an assumption, modification, consolidation or extension of any Bulk Mortgage Loan entered into in accordance with the terms and conditions set forth herein under this section entitled "Bulk Whole Loan Transfers" within two weeks of their execution, provided, however, that the Seller shall provide the Bulk Custodian with a certified true copy of any such document submitted for recordation within two weeks of its execution, and shall provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original within ninety (90) days of its submission for recordation.

## Closing Documents

(a) On or before the Initial Closing Date, the Seller shall submit to DB Structured Products, Inc. fully executed originals of the following documents:

(1) An Officer's Certificate including all attachments thereto; and

(2) The Underwriting Guidelines for each origination program.

(b) The Closing Documents for the Bulk Mortgage Loans to be purchased on each Closing Date shall consist of fully executed originals of the following documents:

(1) The related Bulk Commitment Letter;

(2) the related Bulk Mortgage Loan Schedule to be attached to the related Assignment and Conveyance;

(3) A Bulk Custodian's trust receipt and initial certification, as required under the Bulk Custodial Agreement, in a form acceptable to DB Structured Products, Inc.;

(4) If requested by DB Structured Products, Inc., an Officer's Certificate including all attachments thereto;

(5) A Security Release Certification in a form acceptable to DB Structured Products, Inc., executed by any Person, as requested by DB Structured Products, Inc., if any of the Bulk Mortgage Loans has at any time been subject to any security interest, pledge or hypothecation for the benefit of such Person;

(6) A certificate or other evidence of merger or change of name, signed or stamped by the applicable regulatory authority, if any of the Bulk Mortgage Loans were acquired by the Seller by merger or acquired or originated by the Seller while conducting business under a name other than its present name, if applicable;

(7) An Assignment and Conveyance in the form attached to the related Bulk Commitment Letter; and

(8) Any modifications, amendments or supplements to the Underwriting Guidelines following the Initial Closing Date.

## Additional Representations and Warranties Respecting the Seller

With respect to each Bulk Whole Loan Transfer, in addition to the representations, warranties and covenants set forth hereunder in the subsection entitled "Seller Representations and Warranties", the Seller hereby makes the following representations and warranties as to each Bulk Mortgage Loan, as of each Closing Date or as of such date specifically provided herein:

**HUD Approved**

The Seller is a HUD approved mortgagee pursuant to Section 203 of the National Housing Act, and no event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with HUD eligibility requirements or which would require notification to HUD.

**Owner Of Record – Retention Of Files**

Immediately prior to the payment of the Bulk Purchase Price for each Bulk Mortgage Loan, the Seller was the owner of record of the related Security Instrument and the indebtedness evidenced by the related Mortgage Note and upon the payment of the Bulk Purchase Price by DB Structured Products, Inc., in the event that the Seller retains record title, the Seller shall retain such record title to each Security Instrument, each related Mortgage Note and the related Mortgage Files with respect thereto in trust for DB Structured Products,

Chapter 2—Bulk Whole Loan Transfers for DB-ASAP, DB-ALT & DB-SUB

General Provisions

Inc. as the owner thereof and only for the purpose of servicing and supervising the servicing of each Bulk Mortgage Loan.

**Fair Consideration**

The consideration received by the Seller upon the sale of the Bulk Mortgage Loans constitutes fair consideration and reasonably equivalent value for such Bulk Mortgage Loans.

## Additional Representations and Warranties Regarding the Bulk Mortgage Loans

With respect to each Bulk Whole Loan Transfer, in addition to the representations and warranties set forth in the subsection titled "Representations and Warranties Regarding Loans" (other than those representations and warranties under the headings "Underwriting", "Title Insurance" and "Compliance by Others") and in the related Bulk Commitment Letter, the Seller hereby makes the following representations and warranties as to each Bulk Mortgage Loan, as of the related Closing Date for such Bulk Mortgage Loan or as of such date specifically provided herein:

**Anti-predatory Lending Eligibility**

Each Bulk Mortgage Loan has been prudently originated and underwritten by the Seller in compliance with the anti-predatory lending eligibility for purchase requirements of the FNMA Selling Guide.

**Fair Credit Reporting Act**

The Seller and any predecessor servicer has fully furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (e.g., favorable and unfavorable) on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company (three of the credit repositories), on a monthly basis; and the Seller will fully furnish, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (e.g., favorable and unfavorable) on its borrower credit files to Equifax, Experian and Trans Credit Information Company (three of the credit repositories), on a monthly basis.

**Credit Reporting**

The Seller will transmit full-file credit reporting data for each Bulk Mortgage Loan pursuant to Fannie Mae Guide Announcement 95-19 and for each Bulk Mortgage Loan, Company agrees it shall report one of the following statuses each month as follows: new origination, current, delinquent (30-, 60-, 90-days, etc.), foreclosed, or charged-off.

**Balloon Loans**

No Balloon Loan has an original stated maturity of less than seven (7) years.

**Mortgage Insurance**

Each Bulk Mortgage Loan identified on the Bulk Mortgage Loan Schedule as subject to a Primary Insurance Policy will be subject to a Primary Insurance Policy, issued by a Qualified Insurer, which insures that portion of the Bulk Mortgage Loan in excess of the portion of the Appraised Value of the Mortgaged Property required by FNMA and FHLMC. With respect to each Option ARM Bulk Mortgage Loan which allows Negative Amortization, such Primary Insurance Policy contains provisions to cover the potential Negative Amortization of such Option ARM Bulk Mortgage Loan. All provisions of such

Primary Insurance Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. Any Security Instrument subject to any such Primary Insurance Policy obligates the Mortgagor thereunder to maintain such insurance and to pay all premiums and charges in connection therewith.

**Underwriting Guidelines**

Each Bulk Mortgage Loan was underwritten in accordance with the Underwriting Guidelines in effect at the time the Bulk Mortgage Loan was originated.

**Prepayment Penalties**

Each Prepayment Charge, if any, has complied in all material respects with any and all requirements of any federal, state or local law including, without limitation, usury, truth in lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, fair housing, disclosure laws or all predatory and abusive lending laws applicable to the origination and servicing of mortgage loans of a type similar to the Bulk Mortgage Loans have been complied with and the consummation of the transactions contemplated hereby will not involve the violation of any such laws.

**Option Arm Enforceable**

The Security Instrument (including any Negative Amortization which may arise thereunder if the Mortgage is an Option ARM Bulk Mortgage Loan) is a valid, existing and enforceable (A) first lien and first priority security interest with respect to each Bulk Mortgage Loan which is indicated by the Seller to be a First Lien (as reflected on the Bulk Mortgage Loan Schedule), or (B) second lien and second priority security interest with respect to each Bulk Mortgage Loan which is indicated by the Seller to be a Second Lien (as reflected on the Bulk Mortgage Loan Schedule), in either case, on the Mortgaged Property, including all improvements on the Mortgaged Property subject only to (a) the lien of current real property taxes and assessments not yet due and payable, (b) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording being acceptable to mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Bulk Mortgage Loan and which do not adversely affect the Appraised Value of the Mortgaged Property, (c) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Security Instrument or the use, enjoyment, value or marketability of the related Mortgaged Property and (d) with respect to each Bulk Mortgage Loan which is indicated by the Seller to be a Second Lien Bulk Mortgage Loan (as reflected on the Bulk Mortgage Loan Schedule) a First Lien on the Mortgaged Property. Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Bulk Mortgage Loan establishes and creates a valid, existing and enforceable (A) first lien and first priority security interest with respect to each Bulk Mortgage Loan which is indicated by the Seller to be a First Lien (as reflected on the Bulk Mortgage Loan Schedule) or (B) second lien and second priority security interest with respect to each Bulk Mortgage Loan which is indicated by the Seller to be a Second Lien Bulk Mortgage Loan (as reflected on the Mortgage Loan Schedule), in either case, on the property described therein and the Seller has full right to sell and assign the same to DB Structured Products, Inc. The

Chapter 2 — Bulk Whole Loan Transfers for DB-ASAP, DB-ALT & DB-SUB

General Provisions

Mortgaged Property was not, as of the date of origination of the Bulk Mortgage Loan, subject to a mortgage, deed of trust, deed to secure debt or other security instrument creating a lien subordinate to the lien of the Security Instrument.

**Title Insurance**   Unless the Mortgaged Property is located in the State of Iowa and an attorney's certificate and/or a certificate of title guaranty has been obtained, the Bulk Mortgage Loan is covered by an American Land Title Association ("ALTA") lender's title insurance policy (which, in the case of an Adjustable Rate Bulk Mortgage Loan has an adjustable rate mortgage endorsement in the form of ALTA 6.0 or 6.1), issued by a title insurer acceptable to FNMA and FHLMC and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring (subject to the exceptions contained above in (a) and (b) and, with respect to each Bulk Mortgage Loan which is indicated by the Seller to be a Second Lien Bulk Mortgage Loan (as reflected on the Bulk Mortgage Loan Schedule) clause (d)) the Seller, its successors and assigns as to the first priority lien of the Security Instrument in the original principal amount of the Bulk Mortgage Loan (including, if the Bulk Mortgage Loan is an Option ARM Bulk Mortgage Loan which provides for Negative Amortization, the maximum amount of Negative Amortization in accordance with the Security Instrument) and, with respect to any Adjustable Rate Bulk Mortgage Loan, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Security Instrument providing for adjustment in the Mortgage Interest Rate, Monthly Payment and, with respect to an Option ARM Bulk Mortgage Loan which provides for Negative Amortization, the Negative Amortization provisions of the Mortgage Note. Additionally, such lender's title insurance policy affirmatively insures ingress and egress to and from the Mortgaged Property, and against encroachments by or upon the Mortgaged Property or any interest therein. The Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the related Security Instrument, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy. The scope or time period of such policy shall not be limited in any manner. In addition, the policy must comply with the requirements of this *Deutsche Bank Correspondent Lending Seller Guides*.

**Amortization**   Payments on the Bulk Mortgage Loan shall commence (with respect to any newly originated Bulk Mortgage Loans) or commenced no more than sixty days after the proceeds of the Bulk Mortgage Loan were disbursed. The Bulk Mortgage Loan bears interest at the Mortgage Interest Rate. With respect to each Bulk Mortgage Loan which is not an Option ARM Bulk Mortgage Loan, the Mortgage Note is payable on the first day of each month in Monthly Payments, which, (A) in the case of a Fixed Rate Bulk Mortgage Loan, are sufficient to fully amortize the original principal balance over the original term thereof and to pay interest at the related Mortgage Interest Rate, (B) in the case of an Adjustable Rate Bulk Mortgage Loan, are changed on each Adjustment Date, and in any case, are sufficient to fully amortize the original principal balance over the original term thereof and to pay interest at the related Mortgage Interest Rate

and (C) in the case of a Balloon Loan, are based on a fifteen (15) or thirty (30) year amortization schedule, as set forth in the related Mortgage Note, and a final monthly payment substantially greater than the preceding monthly payment which is sufficient to amortize the remaining principal balance of the Balloon Loan and to pay interest at the related Mortgage Interest Rate. No Balloon Loan has an original stated maturity of less than seven (7) years. The Index for each Adjustable Rate Bulk Mortgage Loan is as defined in the related Bulk Mortgage Loan Schedule. With respect to each Bulk Mortgage Loan identified on the Bulk Mortgage Loan Schedule as an interest-only Bulk Mortgage Loan, the interest-only period shall not exceed the period specified on the Bulk Mortgage Loan Schedule and following the expiration of such interest-only period, the remaining Monthly Payments shall be sufficient to fully amortize the original principal balance over the remaining term of the Bulk Mortgage Loan. With respect to each Mortgage Loan which is not an Option ARM Bulk Mortgage Loan, the Mortgage Note does not permit Negative Amortization. With respect to each Option ARM Bulk Mortgage Loan, the related Mortgage Note requires a Monthly Payment, which is sufficient during the period following each Payment Adjustment Date, to fully amortize the outstanding principal balance as of the first day of such period (including any Negative Amortization) over the then remaining term of such Mortgage Note and to pay interest at the related Mortgage Interest Rate. No Bulk Mortgage Loan is a Convertible Bulk Mortgage Loan.

**Superior Liens**  With respect to each Bulk Mortgage Loan which is a Second Lien, (i) the related first lien does not provide for Negative Amortization, and (ii) either no consent for the Bulk Mortgage Loan is required by the holder of the first lien or such consent has been obtained and is contained in the Mortgage File.

**Consolidated Principal**  With respect to each Bulk Mortgage Loan which is not an Option ARM Bulk Mortgage Loan, the consolidated principal amount does not exceed the original principal amount of the Bulk Mortgage Loan. With respect to each Option ARM Bulk Mortgage Loan which provides for Negative Amortization, the consolidated principal amount does not exceed the original principal amount of the Bulk Mortgage Loan plus any Negative Amortization.

**Option ARM LTVs**  With respect to each Option ARM Bulk Mortgage Loan, the maximum amount of Negative Amortization in accordance with the Security Instrument when combined with the original principal balance of the Option ARM Bulk Mortgage Loan shall not result in a Loan-to-Value Ratio in excess of 100%.

**Hazard Insurance**  All buildings upon the Mortgaged Property are insured by an insurer acceptable to FNMA and FHLMC against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the Mortgaged Property is located, pursuant to insurance policies conforming to the requirements of the subsection entitled "Maintenance of Hazard Insurance". All such insurance policies contain a standard mortgagee clause naming the Seller, its successors and assigns as mortgagee and all premiums thereon have been paid. If the Mortgaged Property is in an area identified on a Flood Hazard Map or Flood Insurance Rate Map issued by the Federal Emergency Management Agency as having special flood hazards (and such

flood insurance has been made available) a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration is in effect which policy conforms to the requirements of FNMA and FHLMC and in an amount representing coverage not less than the greater of (i) the lesser of (a) the outstanding principal balance of the Bulk Mortgage Loan (plus any additional amount required to prevent the Mortgagor from being deemed a co-insurer) or (b) the amount necessary to fully compensate for any damage or loss to the improvements which are a part of such property on a replacement cost basis, or (ii) the maximum amount of insurance which is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended. The Security Instrument obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Security Instrument to maintain such insurance at Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor's.

## Remedies for Breach of Any Representation or Warranty

The representations and warranties set forth under the subsections entitled "Seller Representations and Warranties", "Representations and Warranties Regarding Loans", "Additional Representations and Warranties Respecting the Seller" and "Additional Representations and Warranties Regarding the Bulk Mortgage Loans" shall survive the sale of the Bulk Mortgage Loans to DB Structured Products, Inc. and shall inure to the benefit of DB Structured Products, Inc., notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or lack of examination of any Mortgage File. Upon discovery by the Seller or DB Structured Products, Inc. of a breach of any of the representations and warranties which materially and adversely affects the value of the Bulk Mortgage Loans or the interest of DB Structured Products, Inc. (or which materially and adversely affects the interests of DB Structured Products, Inc. in the related Bulk Mortgage Loan in the case of a representation and warranty relating to a particular Bulk Mortgage Loan), the party discovering such breach shall give prompt written notice to the other.

In the event of any breach of a representation or warranty which materially and adversely affects the value of a Bulk Mortgage Loan or the Bulk Mortgage Loans, the Seller shall cure such breach or repurchase such Bulk Mortgage Loan in accordance with the subsection entitled "Repurchase". The Seller shall, at the request of DB Structured Products, Inc. and assuming that the Seller has a Qualified Substitute Bulk Mortgage Loan, rather than repurchase the Bulk Mortgage Loan as provided above, remove such Bulk Mortgage Loan and substitute in its place a Qualified Substitute Bulk Mortgage Loan or Loans; provided that such substitution shall be effected not later than 120 days after notice to the Seller of such breach. If the Seller has no Qualified Substitute Bulk Mortgage Loan, the Seller shall repurchase the deficient Bulk Mortgage Loan.

If the Seller repurchases a Bulk Mortgage Loan that is a MERS Loan, the Seller shall either (i) cause MERS to execute and deliver an assignment of the

Security Instrument in recordable form to transfer the Security Instrument from MERS to the Seller and shall cause such Security Instrument to be removed from registration on the MERS System in accordance with MERS' rules and regulations or (ii) cause MERS to designate on the MERS System the Seller as the beneficial holder of such Bulk Mortgage Loan.

At the time of repurchase of any deficient Bulk Mortgage Loan, DB Structured Products, Inc. and the Seller shall arrange for the reassignment of the repurchased Bulk Mortgage Loan to the Seller and the delivery to the Seller of any documents held by the Bulk Custodian relating to the repurchased Bulk Mortgage Loan. In the event the Repurchase Price is deposited in the Custodial Account, the Seller shall, simultaneously with such deposit, give written notice to DB Structured Products, Inc. that such deposit has taken place.

As to any Deleted Bulk Mortgage Loan for which the Seller substitutes a Qualified Substitute Bulk Mortgage Loan or Loans, the Seller shall effect such substitution by delivering to DB Structured Products, Inc. for such Qualified Substitute Bulk Mortgage Loan or Loans the Mortgage Note, the Security Instrument, the Assignment of Mortgage and such other documents and agreements as are required by this section entitled "Bulk Whole Loan Transfers", with the Mortgage Note endorsed as required therein. The Seller shall deposit in the Custodial Account the Monthly Payment less the Servicing Fee due on such Qualified Substitute Bulk Mortgage Loan or Loans in the month following the date of such substitution. Monthly Payments due with respect to Qualified Substitute Bulk Mortgage Loans in the month of substitution will be retained by the Seller. For the month of substitution, distributions to DB Structured Products, Inc. will include the Monthly Payment due on such Deleted Bulk Mortgage Loan in the month of substitution, and the Seller shall thereafter be entitled to retain all amounts subsequently received by the Seller in respect of such Deleted Bulk Mortgage Loan. The Seller shall give written notice to DB Structured Products, Inc. that such substitution has taken place and shall amend the Bulk Mortgage Loan Schedule to reflect the substitution of the Qualified Substitute Bulk Mortgage Loan. Upon such substitution, such Qualified Substitute Bulk Mortgage Loan or Loans shall be subject to the terms of the Seller Agreement, the related Bulk Commitment Letter and this *Deutsche Bank Correspondent Lending Seller Guides* in all respects, and the Seller shall be deemed to have made with respect to such Qualified Substitute Bulk Mortgage Loan or Loans, as of the date of substitution, the covenants, representations and warranties set forth in the subsections entitled "Seller Representations and Warranties", "Representations and Warranties Regarding Loans", "Additional Representations and Warranties Respecting the Seller" and "Additional Representations and Warranties Regarding the Bulk Mortgage Loans".

For any month in which the Seller substitutes one or more Qualified Substitute Bulk Mortgage Loans for one or more Deleted Bulk Mortgage Loans, the Seller will determine the amount (if any) by which the aggregate principal balance of all such Qualified Substitute Bulk Mortgage Loans as of the date of substitution is less than the aggregate Stated Principal Balance of all such Deleted Bulk Mortgage Loans (after application of scheduled principal payments due in the month of substitution). An amount equal to the sum of (x)

Deutsche Bank

the product of (i) the amount of such shortfall and (ii) the purchase price percentage used to calculate the Bulk Purchase Price, as stated in the related Bulk Commitment Letter and (y) accrued interest on the amount of such shortfall to the last day of the month such substitution occurs, shall be distributed by the Seller in the month of substitution pursuant to the subsection entitled "Servicing Provisions". Accordingly, on the date of such substitution, the Seller will remit to DB Structured Products, Inc. from its own funds an amount equal to such amount.

With respect to any Bulk Mortgage Loan or Loan originated on or after November 7, 2004 which is secured by a Mortgaged Property located in the State of Massachusetts that is a refinanced Loan or Bulk Mortgage Loan, (a) if the related mortgagor alleges any violation of the mortgage loan refinance requirements of the State of Massachusetts or (b) any such Loan or Bulk Mortgage Loan cannot be included in a securitization as a result of any regulatory, predatory or high cost concerns, the Seller shall repurchase such Loan or Bulk Mortgage Loan no later than five (5) business days following DB Structured Products, Inc.'s request for repurchase in an amount equal to the Repurchase Price. DB Structured Products, Inc. and the Seller agree that there shall be no requirement that any violations alleged by a mortgagor as set forth in clause (a) above have any merit or demonstrate any validity prior to the Seller's obligation to repurchase such Loan or Bulk Mortgage Loan. The Seller shall also indemnify DB Structured Products, Inc. as required pursuant to this *Deutsche Bank Correspondent Lending Seller Guides* to the extent that any of the events set forth in clauses (a) or (b) occur.

In addition to the cure, repurchase and substitution obligations, the Seller shall indemnify DB Structured Products, Inc. and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Seller's representations and warranties contained herein. It is understood and agreed that the obligations of the Seller set forth hereunder to cure, substitute for or repurchase a defective Bulk Mortgage Loan and to indemnify DB Structured Products, Inc. as provided herein constitute the sole remedies of DB Structured Products, Inc. respecting a breach of the foregoing representations and warranties. The indemnification obligation of the Seller set forth herein shall survive the termination of the Seller Agreement notwithstanding any applicable statute of limitations, which the Seller hereby expressly waives.

Any cause of action against the Seller relating to or arising out of the breach of any representations and warranties made in the subsections entitled "Seller Representations and Warranties", "Representations and Warranties Regarding Loans", "Additional Representations and Warranties Respecting the Seller" and "Additional Representations and Warranties Regarding the Bulk Mortgage Loans" shall accrue as to any Bulk Mortgage Loan upon (i) discovery of such breach by DB Structured Products, Inc. or notice thereof by the Seller to DB Structured Products, Inc., (ii) failure by the Seller to cure such breach or repurchase such Bulk Mortgage Loan as specified above, and (iii) demand upon

the Seller by DB Structured Products, Inc. for compliance with the relevant provisions of this *Deutsche Bank Correspondent Lending Seller Guides*.

**Bulk Early Delinquency Repurchase**

Notwithstanding anything to the contrary contained in the subsection entitled "Early Delinquency Repurchase", the terms and conditions set forth for such early payment defaults in the related Bulk Commitment Letter shall control for each Bulk Mortgage Loan Package.

**Bankruptcy Filings**

The terms and conditions for bankruptcy filings by the Mortgagor set forth in the related Bulk Commitment Letter shall control for each Bulk Mortgage Loan Package.

**Bulk Early Payoff Policy**

Notwithstanding anything to the contrary contained in the subsection entitled "Early Payoff Policy", the terms and conditions for such payoffs/prepayments and premium recapture set forth in the related Bulk Commitment Letter shall control for each Bulk Mortgage Loan Package.

## Costs

DB Structured Products, Inc. shall pay any commissions due its salesmen and the legal fees and expenses of its attorneys. All other costs and expenses incurred in connection with a Bulk Whole Loan Transfer, including without limitation recording fees, fees for title policy endorsements and continuations, fees for recording Assignments of Mortgage and the Seller's attorney's fees, shall be paid by the Seller. The Seller shall also pay certain expenses of the Bulk Custodian, including but not limited to, the Bulk Custodian's preparation of trust receipts and certifications.

## Removal Of Bulk Mortgage Loans From Inclusion Under The Deutsche Bank Correspondent Lending Seller Guides Upon a Whole Loan Transfer or a Pass-through Transfer on One or More Reconstitution Dates

The Seller and DB Structured Products, Inc. agree that with respect to some or all of the Bulk Mortgage Loans, DB Structured Products, Inc. may effect, in its sole discretion, either:

(1) One or more Whole Loan Transfers; and/or

(2) One or more Pass-Through Transfers.

With respect to each Whole Loan Transfer or Pass-Through Transfer, as the case may be, entered into by DB Structured Products, Inc., the Seller agrees:

(1) To cooperate fully with DB Structured Products, Inc. and any prospective purchaser with respect to all reasonable requests and due diligence procedures and with respect to the preparation (including, but not limited to, the endorsement, delivery, assignment, and execution) of the Bulk Mortgage Loan Documents and other related documents, and with respect to servicing requirements reasonably requested by the rating agencies and credit enhancers;

(2) To execute all Reconstitution Agreements provided that each of the Seller and DB Structured Products, Inc. is given an opportunity to review and reasonably negotiate in good faith the content of such documents not specifically referenced or provided for herein;

(3) With respect to any Whole Loan Transfer or Pass-Through Transfer, the Seller shall make the representations and warranties regarding the Seller and the Bulk Mortgage Loans as of the date of the Whole Loan Transfer or Pass-Through Transfer, modified to the extent necessary to accurately reflect the pool statistics of the Bulk Mortgage Loans as of the date of such Whole Loan Transfer or Pass-Through Transfer and supplemented by additional representations and warranties that are not unreasonable under the circumstances as of the date of such Whole Loan Transfer or Pass-Through Transfer, to the extent that any events or circumstances, including changes in applicable law occurring subsequent to the related Closing Date(s), would render a related Bulk Mortgage Loan unmarketable to a material segment of the secondary mortgage or mortgage-backed securities market;

(4) To deliver to DB Structured Products, Inc., and to any Person designated by DB Structured Products, Inc., such legal documents and in-house Opinions of Counsel as are customarily delivered by originators or servicers, as the case may be, and reasonably determined by DB Structured Products, Inc. to be necessary in connection with Whole Loan Transfers or Pass-

Through Transfers, as the case may be, such in-house Opinions of Counsel for a Pass-Through Transfer to be in the form reasonably acceptable to DB Structured Products, Inc., it being understood that the cost of any opinions of outside special counsel that may be required for a Whole Loan Transfer or Pass-Through Transfer, as the case may be, shall be the responsibility of DB Structured Products, Inc.;

(5) to negotiate and execute one or more subservicing agreements between the Seller (as servicer) and any master servicer which is generally considered to be a prudent master servicer in the secondary mortgage market, designated by DB Structured Products, Inc. in its sole discretion after consultation with the Seller and/or one or more custodial and servicing agreements among DB Structured Products, Inc., the Seller and a third party custodian/trustee which is generally considered to be a prudent custodian/trustee in the secondary mortgage market designated by DB Structured Products, Inc. in its sole discretion after consultation with the Seller, and containing provisions substantially equivalent to those included in the subsection entitled "Servicing Provisions" to the extent required by DB Structured Products, Inc. in either case for the purpose of pooling the Bulk Mortgage Loans with other Bulk Mortgage Loans for resale or securitization;

(6) In connection with any securitization of any Bulk Mortgage Loans, to execute (as servicer) a Reconstitution Agreement, which Reconstitution Agreement may, at DB Structured Products, Inc.'s direction, contain contractual provisions including, but not limited to, a 24-day certificate payment delay (54-day total payment delay), servicer advances of delinquent scheduled payments of principal and interest through liquidation (unless deemed non-recoverable) and prepayment interest shortfalls (to the extent of the monthly servicing fee payable thereto), servicing and Bulk Mortgage Loan representations and warranties which in form and substance conform to the representations and warranties in the related Bulk Commitment Letter, this *Deutsche Bank Correspondent Lending Seller Guides* and to secondary market standards for securities backed by Bulk Mortgage Loans similar to the Bulk Mortgage Loans and such provisions with regard to servicing responsibilities, investor reporting, segregation and deposit of principal and interest payments, custody of the Bulk Mortgage Loans, and other covenants as are required by DB Structured Products, Inc. and one or more nationally recognized rating agencies for mortgage pass-through transactions. If DB Structured Products, Inc. deems it advisable at any time to pool the Bulk Mortgage Loans with other Bulk Mortgage Loans for the purpose of resale or securitization, the Seller agrees to execute a Reconstitution Agreement between itself (as servicer) and a master servicer designated by DB Structured Products, Inc. at its sole discretion, and/or one or

more servicing agreements among the Seller (as servicer), DB Structured Products, Inc. and a trustee designated by DB Structured Products, Inc. at its sole discretion; and

(7) In the event that DB Structured Products, Inc. appoints a credit risk manager in connection with a Pass-Through Transfer, to execute a credit risk management agreement and provide reports and information reasonably required by the credit risk manager.

(8) in connection with any Pass-Through Transfer, to deliver to DB Structured Products, Inc. within five (5) Business Days after request by DB Structured Products, Inc., the information with respect to the Seller (as originator) and each other originator of the Bulk Mortgage Loans as required under Item 1110(a) and (b) of Regulation AB as determined by DB Structured Products, Inc. in its sole discretion. If requested by DB Structured Products, Inc., this will include information about the applicable credit-granting or underwriting criteria;

(9) in connection with any Pass-Through Transfer, to deliver to DB Structured Products, Inc. within five (5) Business Days after request by DB Structured Products, Inc., static pool information as required under Item 1105(a)(1) - (3) and (c) of Regulation AB and in scope and format as determined by DB Structured Products, Inc. in its sole discretion with respect to mortgage loans that were originated by the Seller (as originator) and each other originator of the Bulk Mortgage Loans and which are similar to the Bulk Mortgage Loans;

(10) in connection with any Pass-Through Transfer, to deliver to DB Structured Products, Inc. within five (5) Business Days after request by DB Structured Products, Inc., information with respect to the Seller (as servicer) as required by Item 1108(b) and (c) of Regulation AB as determined by DB Structured Products, Inc. in its sole discretion. In the event that the Seller has delegated any servicing responsibilities with respect to the Bulk Mortgage Loans to a Sub-Servicer, the Seller shall provide the information required pursuant to this clause with respect to the Sub-Servicer;

(11) in connection with any Pass-Through Transfer, to deliver to DB Structured Products, Inc. within five (5) Business Days after request by DB Structured Products, Inc., (i) information regarding any legal proceedings pending (or known to be contemplated) against the Seller (as originator and as servicer) and each other originator of the Bulk Mortgage Loans and each Sub-Servicer as required by Item 1117 of Regulation AB as determined by DB Structured Products, Inc. in its sole discretion, (ii) information regarding affiliations with respect to the Seller (as originator and as servicer) and each other originator of the Bulk Mortgage Loans and each Sub-Servicer as required by Item 1119(a) of Regulation AB as determined by DB Structured Products, Inc. in its sole discretion, and (iii) information regarding relationships and transactions with respect to the Seller (as

originator and as servicer) and each other originator of the Bulk Mortgage Loans and each Sub-Servicer as required by Item 1119(b) and (c) of Regulation AB as determined by DB Structured Products, Inc. in its sole discretion; and

(12) to deliver to DB Structured Products, Inc. and to any Person designated by DB Structured Products, Inc., such statements and audit letters of reputable, certified public accountants pertaining to information provided by the Seller or any Sub-Servicer pursuant to clause (9) above, and pursuant to clauses (8) and (10) above to the extent constituting financial information, as shall be reasonably requested by DB Structured Products, Inc.

The Seller shall indemnify DB Structured Products, Inc. and any sponsor, depositor, issuing entity and underwriter in connection with a Pass-Through Transfer for any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from any untrue statement or alleged untrue statement of any material fact contained in the information provided by the Seller or any Sub-Servicer pursuant to clauses (8), (9), (10) and (11) of this subsection entitled "Removal of Bulk Mortgage Loans from Inclusion Under this *Deutsche Bank Correspondent Lending Seller Guides* Upon a Whole Loan Transfer or a Pass-Though Transfer on One or More Reconstitution Dates" (the "Seller Information") or the omission or the alleged omission to state in the Seller Information a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances in which they are made, not misleading.

All Bulk Mortgage Loans not sold or transferred pursuant to a Whole Loan Transfer or Pass-Through Transfer shall be subject to the Seller Agreement and this *Deutsche Bank Correspondent Lending Seller Guides* and shall continue to be serviced for the remainder of the Interim Servicing Period in accordance with the terms hereunder and with respect thereto the Seller Agreement and this *Deutsche Bank Correspondent Lending Seller Guides* shall remain in full force and effect.

## Mandatory Delivery

The sale and delivery of each Bulk Mortgage Loan on or before the related Closing Date is mandatory from and after the date of the execution of the related Bulk Commitment Letter, it being specifically understood and agreed that each Bulk Mortgage Loan is unique and identifiable on the date hereof and that an award of money damages would be insufficient to compensate DB Structured Products, Inc. for the losses and damages incurred by DB Structured Products, Inc. (including damages to prospective purchasers of the Bulk Mortgage Loans) in the event of the Seller's failure to deliver each of the related Bulk Mortgage Loans or one or more Bulk Mortgage Loans otherwise acceptable to DB Structured Products, Inc. on or before the related Closing Date.

Deutsche Bank

## Grant of Security Interest

The Seller hereby grants to DB Structured Products, Inc. a lien on and a continuing security interest in each Bulk Mortgage Loan and each document and instrument evidencing each such Bulk Mortgage Loan to secure the performance by the Seller of its obligation hereunder, and the Seller agrees that it holds such Bulk Mortgage Loans in custody for DB Structured Products, Inc. subject to DB Structured Products, Inc.'s (i) right to reject any Bulk Mortgage Loan under the terms of this *Deutsche Bank Correspondent Lending Seller Guides* and the related Bulk Commitment Letter, and (ii) obligation to pay the related Bulk Purchase Price for the Bulk Mortgage Loans. All rights and remedies of DB Structured Products, Inc. under this *Deutsche Bank Correspondent Lending Seller Guides* are distinct from, and cumulative with, any other rights or remedies under this *Deutsche Bank Correspondent Lending Seller Guides* or afforded by law or equity and all such rights and remedies may be exercised concurrently, independently or successively.

## Successors and Assigns

With respect to any Bulk Mortgage Loan, the Seller Agreement and Volume 1 of the *Deutsche Bank Correspondent Lending Seller Guides* shall bind and inure to the benefit of and be enforceable by the Seller and DB Structured Products, Inc. and the respective successors and assigns of the Seller and DB Structured Products, Inc. DB Structured Products, Inc. may assign the Seller Agreement, with respect to any Bulk Mortgage Loan, to any Person to whom any Bulk Mortgage Loan is transferred whether pursuant to a sale or financing and to any Person to whom the servicing or master servicing of any Bulk Mortgage Loan is sold or transferred. Upon any such assignment, the Person to whom such assignment is made shall succeed to all rights and obligations of DB Structured Products, Inc. under the Seller Agreement and Volume 1 of the *Deutsche Bank Correspondent Lending Seller Guides* to the extent of the related Bulk Mortgage Loan or Loans. In addition, the Seller Agreement and Volume 1 of the *Deutsche Bank Correspondent Lending Seller Guides*, to the extent of the related Bulk Mortgage Loan or Loans, shall be deemed to be a separate and distinct Seller Agreement and Volume 1 of the *Deutsche Bank Correspondent Lending Seller Guides* between the Seller and such purchaser, and a separate and distinct Seller Agreement and Volume 1 of the *Deutsche Bank Correspondent Lending Seller Guides* between the Seller and each other purchaser to the extent of the other related Bulk Mortgage Loan or Loans. In the event that the Seller Agreement and Volume 1 of the *Deutsche Bank Correspondent Lending Seller Guides* is assigned to any Person to whom the servicing or master servicing of any Bulk Mortgage Loan is sold or transferred, the rights and benefits hereunder which inure to DB Structured Products, Inc. shall inure to the benefit of both the Person to whom such Bulk Mortgage Loan is transferred and the Person to whom the servicing or master servicing of the Bulk Mortgage Loan has been transferred. The Seller Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of DB Structured Products, Inc.

## Conflicts With Bulk Commitment Letter

The terms and conditions set forth in the Bulk Commitment Letter with respect to each Closing Date shall be incorporated herein. In the event of any conflict between the terms hereunder and the related Bulk Commitment Letter, the Bulk Commitment Letter shall control.

## Third Party Beneficiary

In connection with any Pass-Through Transfer, any Master Servicer shall be considered a third party beneficiary to the Seller Agreement entitled to all the rights and benefits accruing to any Master Servicer herein as if it were a direct party to the Seller Agreement.

## Seller – Negative Covenants

**Merger or Consolidation of the Seller**

The Seller shall keep in full force and effect its existence, rights and franchises under the laws of the state of its incorporation or formation, as applicable, except as permitted herein, and shall obtain and preserve its qualification to do business as a foreign entity in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of the Seller Agreement and this *Deutsche Bank Correspondent Lending Seller Guides* or any of the Bulk Mortgage Loans, and to enable the Seller to perform its duties hereunder.

Any Person into which the Seller may be merged or consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Seller shall be a party, or any Person succeeding to the business of the Seller, shall be the successor of the Seller hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided, however, that the successor or surviving Person shall be an institution whose deposits are insured by FDIC or a company whose business is the origination and servicing of Bulk Mortgage Loans, shall be a FNMA or FHLMC approved seller/servicer and shall satisfy any requirements of the subsection entitled "Successor to the Seller" with respect to the qualifications of a successor to the Seller.

**Seller Not To Resign**

The Seller shall not assign the Seller Agreement and this *Deutsche Bank Correspondent Lending Seller Guides* or resign from the obligations and duties hereby imposed on it except by mutual consent of the Seller and DB Structured Products, Inc. or upon the determination that its servicing duties hereunder are no longer permissible under applicable law and such incapacity cannot be cured by the Seller in which event the Seller may resign as servicer. Any such determination permitting the resignation of the Seller as servicer shall be evidenced by an Opinion of Counsel to such effect delivered to DB Structured Products, Inc. which Opinion of Counsel shall be in form and substance acceptable to DB Structured Products, Inc. and which shall be provided at the cost of the Seller. No such resignation shall become effective until a successor

Chapter 2 — Bulk Whole Loan Transfers for DB-ASAP, DB-ALT & DB-SUB

**General Provisions**

shall have assumed the Seller's responsibilities and obligations hereunder in the manner provided in the subsection entitled "Successors to the Seller".

**No Transfer of Servicing.**

The Seller acknowledges that DB Structured Products, Inc. has acted in reliance upon the Seller's independent status, the adequacy of its servicing facilities, plan, personnel, records and procedures, its integrity, reputation and financial standing and the continuance thereof. The Seller shall not assign the servicing hereunder or delegate its rights or duties hereunder or any portion thereof, or sell or otherwise dispose of all or substantially all of its property or assets, without the prior written approval of DB Structured Products, Inc., which consent will not be unreasonably withheld.

# Servicing Provisions

The Seller, as independent contract servicer, shall service and administer the Bulk Mortgage Loans during the Interim Servicing Period in accordance with the terms and provisions set forth herein.

## Seller to Act as Sevicer

The Seller, as independent contract servicer, shall service and administer the Bulk Mortgage Loans that the Seller sells to DB Structured Products, Inc. hereunder in accordance with all applicable laws, rules and regulations, the terms of the Mortgage Note and Security Instrument, the FNMA and FHLMC servicing guides and this *Deutsche Bank Correspondent Lending Seller Guides* during the Interim Servicing Period, directly or through one or more sub-servicers, and shall have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration which the Seller may deem necessary or desirable and consistent with the terms hereunder.

Consistent with the terms hereunder, the Seller may waive, modify or vary any term of any Bulk Mortgage Loan or consent to the postponement of strict compliance with any such term or in any manner grant indulgence to any Mortgagor if in the Seller's reasonable and prudent determination such waiver, modification, postponement or indulgence is not materially adverse to DB Structured Products, Inc.; provided, however, that the Seller shall not permit any modification with respect to any Bulk Mortgage Loan that would change the Mortgage Interest Rate, defer or forgive the payment thereof or of any principal or interest payments, reduce the outstanding principal amount (except for actual payments of principal), make additional advances of additional principal or extend the final maturity date on such Bulk Mortgage Loan. Without limiting the generality of the foregoing, the Seller shall continue, and is hereby authorized and empowered, to execute and deliver on behalf of itself, and DB Structured Products, Inc., all instruments of satisfaction or cancellation, or of partial or full release, discharge and all other comparable instruments, with respect to the Bulk Mortgage Loans and with respect to the Mortgaged Property. If reasonably required by the Seller, DB Structured Products, Inc. shall furnish the Seller with any powers of attorney and other documents necessary or appropriate to enable the Seller to carry out its servicing and administrative duties hereunder.

Notwithstanding anything in this *Deutsche Bank Correspondent Lending Seller Guides* to the contrary, in the event of a Principal Prepayment in full or in part of a Bulk Mortgage Loan, the Seller may not waive any Prepayment Penalty or portion thereof required by the terms of the related Mortgage Note unless (i) the Seller determines that such waiver would maximize recovery of Liquidation Proceeds for such Bulk Mortgage Loan, taking into account the value of such Prepayment Penalty and the Bulk Mortgage Loan, and the waiver of such Prepayment Penalty is standard and customary in servicing similar Bulk Mortgage Loans (including the waiver of a Prepayment Penalty in connection with a refinancing of the Bulk Mortgage Loan related to a default or a

reasonably foreseeable default) or (ii) (A) the enforceability thereof is limited (1) by bankruptcy, insolvency, moratorium, receivership, or other similar law relating to creditors' rights or (2) due to acceleration in connection with a foreclosure or other involuntary payment, or (B) the enforceability is otherwise limited or prohibited by subsequent changes in applicable law. In no event shall the Seller waive a Prepayment Penalty in connection with a refinancing of a Bulk Mortgage Loan that is not related to a default or a reasonably foreseeable default. If the Seller waives or does not collect all or a portion of a Prepayment Penalty relating to a Principal Prepayment in full or in part due to any action or omission of the Seller, other than as provided above, the Seller shall deposit the amount of such Prepayment Penalty (or such portion thereof as had been waived for deposit) into the Custodial Account at the time of such prepayment for distribution.

In servicing and administering the Bulk Mortgage Loans, the Seller shall employ procedures including collection procedures and exercise the same care that it customarily employs and exercises in servicing and administering mortgage loans for its own account giving due consideration to accepted mortgage servicing practices of prudent lending institutions and DB Structured Products, Inc.'s reliance on the Seller.

## Sub-servicing Agreements Between the Seller and Sub-servicers

The Seller, as servicer, may arrange for the subservicing of any Bulk Mortgage Loan by a Sub-Servicer pursuant to a Sub-Servicing Agreement; provided that such sub-servicing arrangement and the terms of the related Sub-Servicing Agreement must provide for the servicing of such Bulk Mortgage Loans in a manner consistent with the servicing arrangements contemplated under this *Deutsche Bank Correspondent Lending Seller Guides.* Each Sub-Servicer shall be (i) authorized to transact business in the state or states where the related Mortgaged Properties it is to service are situated, if and to the extent required by applicable law to enable the Sub-Servicer to perform its obligations this *Deutsche Bank Correspondent Lending Seller Guides* and under the Sub-Servicing Agreement and (ii) a FHLMC or FNMA approved mortgage servicer. Notwithstanding the provisions of any Sub-Servicing Agreement, any of the provisions of this *Deutsche Bank Correspondent Lending Seller Guides* relating to agreements or arrangements between the Seller or a Sub-Servicer or reference to actions taken through the Seller or otherwise, the Seller shall remain obligated and liable to DB Structured Products, Inc. and its successors and assigns for the servicing and administration of the Bulk Mortgage Loans in accordance with the provisions of this *Deutsche Bank Correspondent Lending Seller Guides* without diminution of such obligation or liability by virtue of such Sub-Servicing Agreements or arrangements or by virtue of indemnification from the Sub-Servicer and to the same extent and under the same terms and conditions as if the Seller alone were servicing and administering the Bulk Mortgage Loans. Every Sub-Servicing Agreement entered into by the Seller shall contain a provision giving the successor servicer the option to terminate such agreement in the event a successor servicer is appointed. All actions of each Sub-Servicer performed pursuant to the related Sub-Servicing Agreement

shall be performed as an agent of the Seller with the same force and effect as if performed directly by the Seller.

For purposes of this *Deutsche Bank Correspondent Lending Seller Guides*, the Seller shall be deemed to have received any collections, recoveries or payments with respect to the Bulk Mortgage Loans that are received by a Sub-Servicer regardless of whether such payments are remitted by the Sub-Servicer to the Seller.

## Successor Sub-servicers

Any Sub-Servicing Agreement shall provide that the Seller shall be entitled to terminate any Sub-Servicing Agreement and to either itself directly service the related Bulk Mortgage Loans or enter into a Sub-Servicing Agreement with a successor Sub-Servicer which qualifies under the subsection entitled "Assumption or Termination of Sub-Servicing Agreement by Successor Servicer". Any Sub-Servicing Agreement shall include the provision that such agreement may be immediately terminated by any successor to the Seller without fee, in accordance with the terms of this *Deutsche Bank Correspondent Lending Seller Guides*, in the event that the Seller (or any successor to the Seller) shall, for any reason, no longer be the servicer of the related Bulk Mortgage Loans (including termination due to an Event of Default).

## No Contractual Relationship Between Sub-servicer and DB Structured Products, Inc.

Any Sub-Servicing Agreement and any other transactions or services relating to the Bulk Mortgage Loans involving a Sub-Servicer shall be deemed to be between the Sub-Servicer and the Seller alone and DB Structured Products, Inc. shall not be deemed a party thereto and shall have no claims, rights, obligations, duties or liabilities with respect to any Sub-Servicer except as set forth in the subsection entitled "Assumption or Termination of Sub-Servicing Agreement by Successor Servicer".

## Assumption or Termination of Sub-servicing Agreement by Successor Servicer.

In connection with the assumption of the responsibilities, duties and liabilities and of the authority, power and rights of the Seller hereunder by a successor servicer pursuant to subsection entitled "Successor to the Seller", it is understood and agreed that the Seller's rights and obligations under any Sub-Servicing Agreement then in force between the Seller and a Sub-Servicer shall be assumed simultaneously by such successor servicer without act or deed on the part of such successor servicer; provided, however, that any successor servicer may terminate the Sub-Servicer.

The Seller shall, upon the reasonable request of DB Structured Products, Inc., but at its own expense, deliver to the assuming party documents and records relating to each Sub-Servicing Agreement and an accounting of amounts

collected and held by it and otherwise use its best efforts to effect the orderly and efficient transfer of the Sub-Servicing Agreements to the assuming party.

The Servicing Fee payable to any such successor servicer shall be payable from payments received on the Bulk Mortgage Loans in the amount and in the manner set forth in this *Deutsche Bank Correspondent Lending Seller Guides.*

## Collection of Bulk Mortgage Loan Payments

Continuously from the related Closing Date until the expiration of the Interim Servicing Period, the Seller shall proceed diligently to collect all payments due under each Bulk Mortgage Loan when the same shall become due and payable and shall, to the extent such procedures shall be consistent with this section entitled "Bulk Whole Loan Transfers" and the terms and provisions of any related Primary Insurance Policy or LPMI Policy, follow such collection procedures as it follows with respect to Bulk Mortgage Loans comparable to the Bulk Mortgage Loans and held for its own account. Further, the Seller shall take special care in ascertaining and estimating annual ground rents, taxes, assessments, water rates, fire and hazard insurance premiums, mortgage insurance premiums, and all other charges that, as provided in the Security Instrument, will become due and payable to the end that the installments payable by the Mortgagors will be sufficient to pay such charges as and when they become due and payable.

## Realization Upon Defaulted Bulk Mortgage Loans

(a) The Seller shall use its best efforts, consistent with the procedures that the Seller would use in servicing loans for its own account, to foreclose upon or otherwise comparably convert the ownership of such Mortgaged Properties as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments. The Seller shall use its best efforts to realize upon defaulted Bulk Mortgage Loans in such a manner as will maximize the receipt of principal and interest by DB Structured Products, Inc., taking into account, among other things, the timing of foreclosure proceedings. The foregoing is subject to the provisions that, in any case in which Mortgaged Property shall have suffered damage, the Seller shall not be required to expend its own funds toward the restoration of such property in excess of $2,000 unless it shall determine in its discretion (i) that such restoration will increase the proceeds of liquidation of the related Bulk Mortgage Loan to DB Structured Products, Inc. after reimbursement to itself for such expenses, and (ii) that such expenses will be recoverable by the Seller through Insurance Proceeds or Liquidation Proceeds from the related Mortgaged Property, as contemplated in the subsection entitled "Permitted Withdrawals from the Custodial Account". In the event that any payment due under any Bulk Mortgage Loan is not paid when the same becomes due and payable, or in the event the Mortgagor

fails to perform any other covenant or obligation under the Bulk Mortgage Loan and such failure continues beyond any applicable grace period, the Seller shall take such action as it shall deem to be in the best interest of DB Structured Products, Inc. In the event that any payment due under any Bulk Mortgage Loan remains delinquent for a period of 90 days or more, the Seller shall commence foreclosure proceedings, provided that prior to commencing foreclosure proceedings, the Seller shall notify DB Structured Products, Inc. in writing of the Seller's intention to do so, and the Seller shall not commence foreclosure proceedings if DB Structured Products, Inc. objects to such action within ten (10) Business Days of receiving such notice. The Seller shall notify DB Structured Products, Inc. in writing of the commencement of foreclosure proceedings. In such connection, the Seller shall be responsible for all costs and expenses incurred by it in any such proceedings; provided, however, that it shall be entitled to reimbursement thereof from the related Mortgaged Property, as contemplated in the subsection entitled "Permitted Withdrawals from the Custodial Account".

(b) Notwithstanding the foregoing provisions of this subsection entitled "Realization Upon Defaulted Bulk Mortgage Loans", with respect to any Bulk Mortgage Loan as to which the Seller has received actual notice of, or has actual knowledge of, the presence of any toxic or hazardous substance on the related Mortgaged Property the Seller shall not either (i) obtain title to such Mortgaged Property as a result of or in lieu of foreclosure or otherwise, or (ii) otherwise acquire possession of, or take any other action, with respect to, such Mortgaged Property if, as a result of any such action, DB Structured Products, Inc. would be considered to hold title to, to be a mortgagee-in-possession of, or to be an owner or operator of such Mortgaged Property within the meaning of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, or any comparable law, unless the Seller has also previously determined, based on its reasonable judgment and a prudent report prepared by a Person who regularly conducts environmental audits using customary industry standards, that:

(1) Such Mortgaged Property is in compliance with applicable environmental laws or, if not, that it would be in the best economic interest of DB Structured Products, Inc. to take such actions as are necessary to bring the Mortgaged Property into compliance therewith; and

(2) There are no circumstances present at such Mortgaged Property relating to the use, management or disposal of any hazardous substances, hazardous materials, hazardous wastes, or petroleum-based materials for which investigation, testing, monitoring, containment, cleanup or remediation could be required under any

Chapter 2—Bulk Whole Loan Transfers for DB-ASAP, DB-ALT & DB-SUB

Servicing Provisions

federal, state or local law or regulation, or that if any such materials are present for which such action could be required, that it would be in the best economic interest of DB Structured Products, Inc. to take such actions with respect to the affected Mortgaged Property.

The cost of the environmental audit report contemplated by this subsection entitled "Realization Upon Defaulted Bulk Mortgage Loans" shall be advanced by the Seller, subject to the Seller's right to be reimbursed therefor from the Custodial Account as provided in subparagraph (v) of the subsection entitled "Permitted Withdrawals from the Custodial Account".

If the Seller determines, as described above, that it is in the best economic interest of DB Structured Products, Inc. to take such actions as are necessary to bring any such Mortgaged Property into compliance with applicable environmental laws, or to take such action with respect to the containment, cleanup or remediation of hazardous substances, hazardous materials, hazardous wastes, or petroleum-based materials affecting any such Mortgaged Property, then the Seller shall take such action as it deems to be in the best economic interest of DB Structured Products, Inc. The cost of any such compliance, containment, cleanup or remediation shall be advanced by the Seller, subject to the Seller's right to be reimbursed therefor from the Custodial Account as provided in subparagraph (v) of the subsection entitled "Permitted Withdrawals from the Custodial Account".

(c) Proceeds received in connection with any Final Recovery Determination, as well as any recovery resulting from a partial collection of Insurance Proceeds or Liquidation Proceeds in respect of any Bulk Mortgage Loan, will be applied in the following order of priority: first, to reimburse the Seller for any related unreimbursed Servicing Advances, pursuant to subparagraphs (ii) and (v) of the subsection entitled "Permitted Withdrawals from the Custodial Account"; second, to accrued and unpaid interest on the Bulk Mortgage Loan, to the date of the Final Recovery Determination, or to the Due Date prior to the Distribution Date on which such amounts are to be distributed if not in connection with a Final Recovery Determination; and third, as a recovery of principal of the Bulk Mortgage Loan. If the amount of the recovery so allocated to interest is less than the full amount of accrued and unpaid interest due on such Bulk Mortgage Loan, the amount of such recovery will be allocated by the Seller as follows: first, to unpaid Servicing Fees; and second, to the balance of the interest then due and owing. The portion of the recovery so allocated to unpaid Servicing Fees shall be reimbursed to the Seller pursuant to subparagraph (iii) of the subsection entitled "Permitted Withdrawals from the Custodial Account".

## Establishment of Custodial Accounts; Deposits in Custodial Accounts

The Seller shall segregate and hold all funds collected and received pursuant to each Bulk Mortgage Loan separate and apart from any of its own funds and general assets and shall establish and maintain one or more Custodial Accounts, in the form of time deposit or demand accounts.

The Seller shall deposit in the related Custodial Account on a daily basis, and retain therein the following payments and collections received by it subsequent to the Cut-off Date, or received by it prior to the Cut-off Date but allocable to a period subsequent thereto, other than in respect of principal and interest on the Bulk Mortgage Loans due on or before the Cut-off Date:

(i)   All payments on account of principal on the Bulk Mortgage Loans;

(ii)  All payments on account of interest on the Bulk Mortgage Loans, including all Prepayment Penalties;

(iii) All Liquidation Proceeds;

(iv)  All Insurance Proceeds including amounts required to be deposited pursuant to the subsections entitled "Maintenance of Hazard Insurance" and "Maintenance of Mortgage Impairment Insurance Policy", other than proceeds to be held in the Escrow Account and applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor in accordance with the Seller's normal servicing procedures, the loan documents or applicable law;

(v)   All Condemnation Proceeds affecting any Mortgaged Property which are not released to the Mortgagor in accordance with the Seller's normal servicing procedures, the loan documents or applicable law;

(vi)  All proceeds of any Bulk Mortgage Loan repurchased in accordance with the subsections entitled "Bulk Early Delinquency Repurchase" and "Bulk Early Payoff Policy" and all amounts required to be deposited by the Seller in connection with shortfalls in principal amounts for Qualified Substitute Bulk Mortgage Loans;

(vii) Any amounts required to be deposited by the Seller pursuant to the subsection entitled "Maintenance of Mortgage Impairment Insurance Policy" in connection with the deductible clause in any blanket hazard insurance policy. Such deposit shall be made from the Seller's own funds, without reimbursement therefor;

(viii) Any amounts required to be deposited by the Seller in connection with any REO Property pursuant to the subsection entitled "Title, Management and Disposition of REO Property"; and

(ix)  any amounts required to be deposited in the Custodial Account pursuant to the subsections entitled "Assumption Agreements" and "Satisfaction of Mortgages and Release of Mortgage Files".

Deutsche Bank

The foregoing requirements for deposit in the Custodial Account shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments in the nature of late payment charges and assumption fees, to the extent permitted by the subsection entitled "Servicing Compensation", need not be deposited by the Seller in the Custodial Account. Such Custodial Account shall be an Eligible Account. Any interest or earnings on funds deposited in the Custodial Account by the depository institution shall accrue to the benefit of the Seller and the Seller shall be entitled to retain and withdraw such interest from the related Custodial Account pursuant to subparagraph (iii) in the subsection entitled "Permitted Withdrawals from the Custodial Account". The Seller shall give notice to DB Structured Products, Inc. of the location of the Custodial Account when established and prior to any change thereof.

If the balance on deposit in the Custodial Account exceeds $75,000 as of the commencement of business on any Business Day and the Custodial Account constitutes an Eligible Account solely pursuant to clause (ii) of the definition of Eligible Account, the Seller shall, on or before twelve o'clock noon Eastern time on such Business Day, withdraw from the related Custodial Account any and all amounts payable to DB Structured Products, Inc. and remit such amounts to DB Structured Products, Inc. by wire transfer of immediately available funds.

## Permitted Withdrawals From the Custodial Account

The Seller may, from time to time, withdraw from the related Custodial Account for the following purposes:

(i) To make distributions to DB Structured Products, Inc. in the amounts and in the manner provided for in the subsection entitled "Distributions";

(ii) To reimburse itself for unreimbursed Servicing Advances, the Seller's right to reimburse itself pursuant to this sub clause (ii) with respect to any Bulk Mortgage Loan being limited to related Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds and such other amounts as may be collected by the Seller from the Mortgagor or otherwise relating to the Bulk Mortgage Loan, it being understood that, in the case of such reimbursement, the Seller's right thereto shall be prior to the rights of DB Structured Products, Inc., except that, where the Seller is required to repurchase a Bulk Mortgage Loan, pursuant to the subsection entitled "Remedies for Breach of Any Representation or Warranty", the Seller's right to such reimbursement shall be subsequent to the payment to DB Structured Products, Inc. of the Repurchase Price and all other amounts required to be paid to DB Structured Products, Inc. with respect to such Bulk Mortgage Loans;

(iii) to pay to itself pursuant to the subsection entitled "Servicing Compensation" as servicing compensation (a) any interest earned on funds in the Custodial Account (all such interest to be

withdrawn monthly not later than each Distribution Date), and (b) the Servicing Fee from that portion of any payment or recovery as to interest on a particular Bulk Mortgage Loan;

(iv) to pay to itself with respect to each Bulk Mortgage Loan that has been repurchased pursuant to the subsection entitled "Remedies for Breach of Any Representation or Warranty" all amounts received thereon and not distributed as of the date on which the related Repurchase Price is determined;

(v) to pay, or to reimburse the Seller for advances in respect of, expenses incurred in connection with any Bulk Mortgage Loan pursuant to subparagraph (b) in the subsection entitled "Realization Upon Defaulted Bulk Mortgage Loans", but only to the extent of amounts received in respect of the Bulk Mortgage Loans to which such expense is attributable; and

(vi) to clear and terminate the Custodial Account on the termination of the Seller Agreement.

The Seller shall keep and maintain separate accounting, on a Bulk Mortgage Loan by Bulk Mortgage Loan basis, for the purpose of justifying any withdrawal from the Custodial Account pursuant to such sub clauses (ii) - (v) above.

## Establishment of Escrow Accounts; Deposits in Escrow Accounts

The Seller shall segregate and hold all funds collected and received pursuant to each Bulk Mortgage Loan which constitute Escrow Payments separate and apart from any of its own funds and general assets and shall establish and maintain one or more Escrow Accounts, in the form of time deposit or demand accounts.

The Seller shall deposit in the Escrow Account or Accounts on a daily basis, and retain therein, (i) all Escrow Payments collected on account of the Bulk Mortgage Loans, for the purpose of effecting timely payment of any such items as required hereunder, and (ii) all Insurance Proceeds which are to be applied to the restoration or repair of any Mortgaged Property. The Seller shall make withdrawals therefrom only to effect such payments as are required hereunder, and for such other purposes as shall be as set forth or in accordance with the subsection entitled "Payment of Taxes, Insurance and Other Charges; Maintenance of Primary Insurance Policies and LPMI Policies; Collections Thereunder". The Seller shall be entitled to retain any interest paid on funds deposited in the related Escrow Account by the depository institution other than interest on escrowed funds required by law to be paid to the Mortgagor and, to the extent required by law, the Seller shall pay interest on escrowed funds to the Mortgagor notwithstanding that the Escrow Account is non-interest bearing or that interest paid thereon is insufficient for such purposes.

## Permitted Withdrawals From Escrow Account

Withdrawals from the related Escrow Account may be made by the Seller (i) to effect timely payments of ground rents, taxes, assessments, water rates, hazard insurance premiums, Primary Insurance Policy premiums, if applicable, and comparable items, (ii) to reimburse the Seller for any Servicing Advance made by the Seller with respect to a related Bulk Mortgage Loan but only from amounts received on the related Bulk Mortgage Loan which represent late payments or collections of Escrow Payments thereunder, (iii) to refund to the Mortgagor any funds as may be determined to be overages, (iv) for transfer to the related Custodial Account in accordance with the terms hereunder, (v) for application to restoration or repair of the Mortgaged Property, (vi) to pay to the Seller, or to the Mortgagor to the extent required by law, any interest paid on the funds deposited in the Escrow Account, or (vii) to clear and terminate the Escrow Account on the termination of the Seller Agreement.

## Payment of Taxes, Insurance and Other Charges; Maintenance of Primary Insurance Policies and LPMI Policies; Collections Thereunder

With respect to each Bulk Mortgage Loan, the Seller shall maintain accurate records reflecting the status of ground rents, taxes, assessments, water rates and other charges which are or may become a lien upon the Mortgaged Property and the status of Primary Insurance Policy and LPMI Policy premiums and fire and hazard insurance coverage and shall obtain, from time to time, all bills for the payment of such charges, including insurance renewal premiums and shall effect payment thereof prior to the applicable penalty or termination date and at a time appropriate for securing maximum discounts allowable, employing for such purpose deposits of the Mortgagor in the related Escrow Account which shall have been estimated and accumulated by the Seller in amounts sufficient for such purposes, as allowed under the terms of the Security Instrument and applicable law. To the extent that the Security Instrument does not provide for Escrow Payments, the Seller shall determine that any such payments are made by the Mortgagor at the time they first become due. The Seller assumes full responsibility for the timely payment of all such bills and shall effect timely payments of all such bills irrespective of the Mortgagor's faithful performance in the payment of same or the making of the Escrow Payments and shall make advances from its own funds to effect such payments.

The Seller shall maintain in full force and effect, a Primary Insurance Policy, issued by a Qualified Insurer, with respect to each Bulk Mortgage Loan for which such coverage is required. Such coverage shall be maintained until the Loan-to-Value Ratio of the related Bulk Mortgage Loan is reduced to that amount for which FNMA no longer requires such insurance to be maintained. The Seller will not cancel or refuse to renew any Primary Insurance Policy in effect on the related Closing Date that is required to be kept in force hereunder unless a replacement Primary Insurance Policy or LPMI Policy for such cancelled or non- renewed policy is obtained from and maintained with a

Qualified Insurer. The Seller shall not take any action which would result in non-coverage under any applicable Primary Insurance Policy or LPMI Policy of any loss which, but for the actions of the Seller, would have been covered thereunder. In connection with any assumption or substitution agreement entered into or to be entered into pursuant to the subsection entitled "Assumption Agreements", the Seller shall promptly notify the insurer under the related Primary Insurance Policy or LPMI Policy, if any, of such assumption or substitution of liability in accordance with the terms of such policy and shall take all actions which may be required by such insurer as a condition to the continuation of coverage under the Primary Insurance Policy or LPMI Policy. If such Primary Insurance Policy is terminated as a result of such assumption or substitution of liability, the Seller shall obtain a replacement Primary Insurance Policy as provided above.

In connection with its activities as servicer, the Seller agrees to prepare and present, on behalf of itself, and DB Structured Products, Inc., claims to the insurer under any Primary Insurance Policy or LPMI Policy in a timely fashion in accordance with the terms of such policies and, in this regard, to take such action as shall be necessary to permit recovery under any Primary Insurance Policy or LPMI Policy respecting a defaulted Bulk Mortgage Loan. Pursuant to the subsection entitled "Establishment of Custodial Accounts; Deposits in Custodial Accounts", any amounts collected by the Seller under any Primary Insurance Policy or LPMI Policy shall be deposited in the related Custodial Account, subject to withdrawal pursuant to the subsection entitled "Permitted Withdrawals From the Custodial Account".

## Transfer of Accounts

The Seller may transfer the related Custodial Account or the related Escrow Account to a different depository institution from time to time. Such transfer shall be made only upon obtaining the consent of DB Structured Products, Inc., which consent shall not be unreasonably withheld. In any case, the Custodial Account and Escrow Account shall be Eligible Accounts.

## Maintenance of Hazard Insurance

The Seller shall cause to be maintained for each Bulk Mortgage Loan fire and hazard insurance with extended coverage as is customary in the area where the Mortgaged Property is located in an amount which is at least equal to the lesser of (i) the amount necessary to fully compensate for any damage or loss to the improvements which are a part of such property on a replacement cost basis or (ii) the outstanding principal balance of the Bulk Mortgage Loan, in each case in an amount not less than such amount as is necessary to prevent the Mortgagor and/or the Mortgagee from becoming a co-insurer. If the Mortgaged Property is in an area identified on a Flood Hazard Boundary Map or Flood Insurance Rate Map issued by the Flood Emergency Management Agency as having special flood hazards and such flood insurance has been made available, the Seller will cause to be maintained a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance

Administration with a generally acceptable insurance carrier, in an amount representing coverage not less than the greater of (i) the lesser of

(a) the outstanding principal balance of the Bulk Mortgage Loan (plus any additional amount required to prevent the Mortgagor from being deemed a co-insurer) (plus, if the Bulk Mortgage Loan is an Option ARM Bulk Mortgage Loan which provides for Negative Amortization, the maximum amount of Negative Amortization in accordance with the Security Instrument) or

(b) the amount necessary to fully compensate for any damage or loss to the improvements which are a part of such property on a replacement cost basis, or

(ii) the maximum amount of insurance which is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended. The Seller also shall maintain on any REO Property, fire and hazard insurance with extended coverage in an amount which is at least equal to the lesser of (i) the maximum insurable value of the improvements which are a part of such property and (ii) the outstanding principal balance of the related Bulk Mortgage Loan at the time it became an REO Property plus accrued interest at the Mortgage Interest Rate and related Servicing Advances, liability insurance and flood insurance in an amount which is at least equal to the greater of (i) the lesser of (a) the outstanding principal balance of the Bulk Mortgage Loan (plus any additional amount required to prevent the Mortgagor from being deemed a co-insurer) (plus, if the Bulk Mortgage Loan is an Option ARM Bulk Mortgage Loan which provides for Negative Amortization, the maximum amount of Negative Amortization in accordance with the Security Instrument) or (b) the amount necessary to fully compensate for any damage or loss to the improvements which are a part of such property on a replacement cost basis, or (ii) the maximum amount of insurance which is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended. Pursuant to the subsection entitled "Establishment of Custodial Accounts; Deposits in Custodial Accounts", any amounts collected by the Seller under any such policies other than amounts to be deposited in the Escrow Account and applied to the restoration or repair of the Mortgaged Property or REO Property, or released to the Mortgagor in accordance with the Seller's normal servicing procedures, shall be deposited in the related Custodial Account, subject to withdrawal pursuant to the subsection entitled "Permitted Withdrawals From the Custodial Account". Any cost incurred by the Seller in maintaining any such insurance shall not, for the purpose of calculating distributions to DB Structured Products, Inc., be added to the unpaid principal balance of the related Bulk Mortgage Loan, notwithstanding that the terms of such Bulk Mortgage Loan so permit. It is understood and agreed that no earthquake or other additional insurance need be required by the Seller of the Mortgagor or maintained on property acquired in respect of the Bulk Mortgage Loan, other than pursuant to such applicable laws and regulations as shall at any time be in force and as shall require such additional insurance. All such policies shall be endorsed with standard mortgagee clauses with loss payable to the Seller, or upon request to DB Structured Products, Inc., and shall provide for at least thirty days prior written notice of any cancellation, reduction in the

amount of, or material change in, coverage to the Seller. The Seller shall not interfere with the Mortgagor's freedom of choice in selecting either his insurance carrier or agent, provided, however, that the Seller shall not accept any such insurance policies from insurance companies unless such companies currently reflect a General Policy Rating of A:VI or better in Best's Key Rating Guide and are licensed to do business in the state wherein the property subject to the policy is located.

## Maintenance of Mortgage Impairment Insurance Policy

In the event that the Seller shall obtain and maintain a mortgage impairment or blanket policy issued by an insurer that has a General Policy Rating of A:VI or better in Best's Key Rating Guide insuring against hazard losses on all Mortgaged Properties securing the Bulk Mortgage Loans, then, to the extent such policy provides coverage in an amount equal to the amount required pursuant to the subsection entitled "Maintenance of Hazard Insurance" and otherwise complies with all other requirements of the subsection entitled "Maintenance of Hazard Insurance", the Seller shall conclusively be deemed to have satisfied its obligations as set forth in the subsection entitled "Maintenance of Hazard Insurance", it being understood and agreed that such policy may contain a deductible clause, in which case the Seller shall, in the event that there shall not have been maintained on the related Mortgaged Property or REO Property a policy complying with the subsection entitled "Maintenance of Hazard Insurance", and there shall have been one or more losses which would have been covered by such policy, deposit in the related Custodial Account the amount not otherwise payable under the blanket policy because of such deductible clause. In connection with its activities as servicer of the Bulk Mortgage Loans, the Seller agrees to prepare and present, on behalf of DB Structured Products, Inc., claims under any such blanket policy in a timely fashion in accordance with the terms of such policy. Upon request of DB Structured Products, Inc., the Seller shall cause to be delivered to DB Structured Products, Inc. a certified true copy of such policy and a statement from the insurer thereunder that such policy shall in no event be terminated or materially modified without thirty days prior written notice to DB Structured Products, Inc.

## Fidelity Bond, Errors and Omissions Insurance

The Seller shall maintain, at its own expense, a blanket fidelity bond and an errors and omissions insurance policy, with broad coverage with responsible companies that would meet the requirements of FNMA or FHLMC on all officers, employees or other persons acting in any capacity with regard to the Bulk Mortgage Loans to handle funds, money, documents and papers relating to the Bulk Mortgage Loans. The fidelity bond and errors and omissions insurance shall be in the form of the Mortgage Banker's Blanket Bond and shall protect and insure the Seller against losses, including forgery, theft, embezzlement, fraud, errors and omissions and negligent acts of such persons. Such fidelity bond shall also protect and insure the Seller against losses in connection with the failure to maintain any insurance policies required

hereunder and the release or satisfaction of a Bulk Mortgage Loan without having obtained payment in full of the indebtedness secured thereby. No provision hereunder requiring the fidelity bond and errors and omissions insurance shall diminish or relieve the Seller from its duties and obligations hereunder. The minimum coverage under any such bond and insurance policy shall be at least equal to the corresponding amounts required by FNMA in the FNMA Servicing Guide or by FHLMC in the FHLMC Seller's and Servicers' Guide. The Seller shall deliver to DB Structured Products, Inc. a certified true copy of the fidelity bond and insurance policy and a statement from the surety and the insurer that such fidelity bond or insurance policy shall in no event be terminated or materially modified without thirty days' prior written notice to DB Structured Products, Inc.

## Title, Management and Disposition of REO Property

In the event that title to the Mortgaged Property is acquired in foreclosure or by deed in lieu of foreclosure, the deed or certificate of sale shall be taken in the name of the person designated by DB Structured Products, Inc., or in the event such person is not authorized or permitted to hold title to real property in the state where the REO Property is located, or would be adversely affected under the "doing business" or tax laws of such state by so holding title, the deed or certificate of sale shall be taken in the name of such Person or Persons as shall be consistent with an opinion of counsel obtained by the Seller from an attorney duly licensed to practice law in the state where the REO Property is located. Any Person or Persons holding such title other than DB Structured Products, Inc. shall acknowledge in writing that such title is being held as nominee for the benefit of DB Structured Products, Inc.

The Seller shall either itself or through an agent selected by the Seller, manage, conserve, protect and operate each REO Property (and may temporarily rent the same) in the same manner that it manages, conserves, protects and operates other foreclosed property for its own account, and in the same manner that similar property in the same locality as the REO Property is managed. If a REMIC election is or is to be made with respect to the arrangement under which the Bulk Mortgage Loans and any REO Property are held, the Seller shall manage, conserve, protect and operate each REO Property in a manner which does not cause such REO Property to fail to qualify as "foreclosure property" within the meaning of Section 860G(a)(8) of the Code or result in the receipt by such REMIC of any "income from non permitted assets" within the meaning of Section 860F(a)(2)(B) of the Code or any "net income from foreclosure property" within the meaning of Section 860G(c)(2) of the Code. The Seller shall cause each REO Property to be inspected promptly upon the acquisition of title thereto and shall cause each REO Property to be inspected at least annually thereafter. The Seller shall make or cause to be made a written report of each such inspection. Such reports shall be retained in the Mortgage File and copies thereof shall be forwarded by the Seller to DB Structured Products, Inc. The Seller shall use its best efforts to dispose of the REO Property as soon as possible and shall sell such REO Property in any event within one year after title has been taken to such REO Property, unless the Seller determines, and gives appropriate notice to DB Structured Products, Inc., that a longer period is

necessary for the orderly liquidation of such REO Property. If a period longer than one year is necessary to sell any REO property, (i) the Seller shall report monthly to DB Structured Products, Inc. as to the progress being made in selling such REO Property and (ii) if, with the written consent of DB Structured Products, Inc., a purchase money mortgage is taken in connection with such sale, such purchase money mortgage shall name the Seller as mortgagee, and a separate servicing agreement between the Seller and DB Structured Products, Inc. shall be entered into with respect to such purchase money mortgage. Notwithstanding the foregoing, if a REMIC election is made with respect to the arrangement under which the Bulk Mortgage Loans and the REO Property are held, such REO Property shall be disposed of within three years or such other period as may be permitted under Section 860G(a)(8) of the Code.

With respect to each REO Property, the Seller shall segregate and hold all funds collected and received in connection with the operation of the REO Property separate and apart from its own funds or general assets and shall establish and maintain a separate REO Account for each REO Property in the form of a non interest bearing demand account, unless an Opinion of Counsel is obtained by the Seller to the effect that the classification as a grantor trust or REMIC for federal income tax purposes of the arrangement under which the Bulk Mortgage Loans and the REO Property is held will not be adversely affected by holding such funds in another manner. Each REO Account shall be established by the Seller as an Eligible Account. The creation of any REO Account shall be evidenced by a letter agreement in a form reasonably acceptable to DB Structured Products, Inc. An original of such letter agreement shall be furnished to any purchaser upon request.

The Seller shall deposit or cause to be deposited, on a daily basis in each REO Account all revenues received with respect to the related REO Property and shall withdraw therefrom funds necessary for the proper operation, management and maintenance of the REO Property, including the cost of maintaining any hazard insurance pursuant to the subsection entitled "Maintenance of Hazard Insurance" hereof and the fees of any managing agent acting on behalf of the Seller. The Seller shall not be entitled to retain interest paid or other earnings, if any, on funds deposited in such REO Account. On or before each Determination Date, the Seller shall withdraw from each REO Account and deposit into the Custodial Account the net income from the REO Property on deposit in the REO Account.

The Seller shall furnish to DB Structured Products, Inc. on each Distribution Date, an operating statement for each REO Property covering the operation of each REO Property for the previous month. Such operating statement shall be accompanied by such other information as DB Structured Products, Inc. shall reasonably request.

Each REO Disposition shall be carried out by the Seller at such price and upon such terms and conditions as the Seller deems to be in the best interest of DB Structured Products, Inc. only with the prior written consent of DB Structured Products, Inc. If as of the date title to any REO Property was acquired by the Seller there were outstanding unreimbursed Servicing Advances with respect to the REO Property, the Seller, upon an REO Disposition of such REO Property,

shall be entitled to reimbursement for any related unreimbursed Servicing Advances from proceeds received in connection with such REO Disposition. The proceeds from the REO Disposition, net of any payment to the Seller as provided above, shall be deposited in the REO Account and shall be transferred to the Custodial Account on the Determination Date in the month following receipt thereof for distribution on the succeeding Distribution Date in accordance with the subsection entitled "Distributions".

## Distributions

On each Distribution Date, the Seller shall distribute to DB Structured Products, Inc. all amounts credited to the related Custodial Account as of the close of business on the preceding Determination Date, net of charges against or withdrawals from the related Custodial Account pursuant to the subsection entitled "Permitted Withdrawals From the Custodial Account".

All distributions made to DB Structured Products, Inc. on each Distribution Date will be based on the Bulk Mortgage Loans owned and held by DB Structured Products, Inc. on the preceding Record Date, and shall be made by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in the related Bulk Commitment Letter.

With respect to any remittance received by DB Structured Products, Inc. on or after the first Business Day following the Business Day on which such payment was due, the Seller shall pay to DB Structured Products, Inc. interest on any such late payment at an annual rate equal to the rate of interest as is publicly announced from time to time at its principal office by JPMorgan Chase Bank, New York, New York, as its prime lending rate, adjusted as of the date of each change, plus three percentage points, but in no event greater than the maximum amount permitted by applicable law. Such interest shall be paid by the Seller to DB Structured Products, Inc. on the date such late payment is made and shall cover the period commencing with the day following such first Business Day and ending with the Business Day on which such payment is made, both inclusive. Such interest shall be remitted along with such late payment. The payment by the Seller of any such interest shall not be deemed an extension of time for payment or a waiver by DB Structured Products, Inc. of any Event of Default by the Seller.

## Remittance Reports

No later than the fifth Business Day of each month, the Seller shall furnish to DB Structured Products, Inc. or its designee an electronic (which shall be provided in Excel format and delivered via email to DBWholeLoanOps@List.DB.com or at such other address requested by DB Structured Products, Inc.) and a hard copy of the monthly data. No later than three Business Days following each Determination Date, the Seller shall deliver to DB Structured Products, Inc. or its designee by telecopy (or by such other means as the Seller and DB Structured Products, Inc. may agree from time to time) an electronic and a hard copy of the determination data with respect to the related Distribution Date, together with such other information with

respect to the Bulk Mortgage Loans as DB Structured Products, Inc. may reasonably require to allocate distributions made pursuant to this section entitled "Bulk Whole Loan Transfers" and provide appropriate statements with respect to such distributions. To the extent that the Bulk Mortgage Loans are the subject of a Pass-Through Transfer, the computer tape must include all information known or available to the Seller that is necessary in order to provide the distribution and pool performance information as required under Item 1121 of Regulation AB as determined by DB Structured Products, Inc. in its sole discretion. The Seller shall modify the computer tape format as requested by DB Structured Products, Inc. from time to time in order to comply with the preceding sentence. On the same date, the Seller shall forward to DB Structured Products, Inc. by overnight mail a computer readable disk containing the information set forth in the remittance report with respect to the related Distribution Date.

## Statements to DB Structured Products, Inc.

Not later than fifteen days after each Distribution Date, the Seller shall forward to DB Structured Products, Inc. or its designee a statement prepared by the Seller setting forth the status of the Custodial Account as of the close of business on such Distribution Date and showing, for the period covered by such statement, the aggregate amount of deposits into and withdrawals from the Custodial Account of each category of deposit specified in the subsection "Establishment of Custodial Accounts; Deposits in Custodial Accounts" and each category of withdrawal specified in the subsection entitled "Permitted Withdrawals From the Custodial Account".

In addition, not more than sixty days after the end of each calendar year, the Seller shall furnish to DB Structured Products, Inc. and each Person that was an owner of any Bulk Mortgage Loan at any time during such calendar year, (i) as to the aggregate of remittances for the applicable portion of such year, an annual statement in accordance with the requirements of applicable federal income tax law, and (ii) listing of the principal balances of the Bulk Mortgage Loans outstanding at the end of such calendar year.

The Seller shall prepare and file any and all tax returns, information statements or other filings required to be delivered to any governmental taxing authority or to any purchaser pursuant to any applicable law with respect to the Bulk Mortgage Loans and the transactions contemplated hereby. In addition, the Seller shall provide DB Structured Products, Inc. with such information concerning the Bulk Mortgage Loans as is necessary for DB Structured Products, Inc. to prepare its federal income tax return as may reasonably requested from time to time.

## Real Estate Owned Reports

Together with the statement furnished pursuant to the subsection entitled "Title, Management and Disposition of REO Property", with respect to any REO Property, the Seller shall furnish to DB Structured Products, Inc. a statement covering the Seller's efforts in connection with the sale of such REO Property

and any rental of such REO Property incidental to the sale thereof for the previous month, together with the operating statement. Such statement shall be accompanied by such other information as DB Structured Products, Inc. shall reasonably request.

## Liquidation Reports

Upon the foreclosure sale of any Mortgaged Property or the acquisition thereof pursuant to a deed in lieu of foreclosure, the Seller shall submit to DB Structured Products, Inc. a liquidation report with respect to such Mortgaged Property.

## Assumption Agreements

The Seller shall, to the extent it has knowledge of any conveyance or prospective conveyance by any Mortgagor of the Mortgaged Property (whether by absolute conveyance or by contract of sale, and whether or not the Mortgagor remains or is to remain liable under the Mortgage Note and/or the Security Instrument), exercise its rights to accelerate the maturity of such Bulk Mortgage Loan under any "due-on-sale" clause applicable thereto; provided, however, that the Seller shall not exercise any such rights if prohibited by law from doing so or if the exercise of such rights would impair or threaten to impair any recovery under the related Primary Insurance Policy or LPMI Policy, if any. If the Seller reasonably believes it is unable under applicable law to enforce such "due-on-sale" clause, the Seller shall enter into an assumption agreement with the person to whom the Mortgaged Property has been conveyed or is proposed to be conveyed, pursuant to which such person becomes liable under the Mortgage Note and, to the extent permitted by applicable state law, the Mortgagor remains liable thereon. Where an assumption is allowed pursuant to this subsection, the Seller, with the prior written consent of the insurer under the Primary Insurance Policy or LPMI Policy, if any, is authorized to enter into a substitution of liability agreement with the person to whom the Mortgaged Property has been conveyed or is proposed to be conveyed pursuant to which the original Mortgagor is released from liability and such Person is substituted as Mortgagor and becomes liable under the related Mortgage Note. Any such substitution of liability agreement shall be in lieu of an assumption agreement.

In connection with any such assumption or substitution of liability, the Seller shall follow the underwriting practices and procedures of prudent mortgage lenders in the state in which the related Mortgaged Property is located. With respect to an assumption or substitution of liability, the Mortgage Interest Rate, the amount of the Monthly Payment, and the final maturity date of such Mortgage Note may not be changed. The Seller shall notify DB Structured Products, Inc. that any such substitution of liability or assumption agreement has been completed by forwarding to DB Structured Products, Inc. the original of any such substitution of liability or assumption agreement, which document shall be added to the related Mortgage File and shall, for all purposes, be considered a part of such Mortgage File to the same extent as all other documents and instruments constituting a part thereof. Any fee collected by

the Seller for entering into an assumption or substitution of liability agreement in excess of 1% of the outstanding principal balance of the Bulk Mortgage Loan shall be deposited in the Custodial Account pursuant to the subsection entitled "Establishment of Custodial Accounts; Deposits in Custodial Accounts".

Notwithstanding the foregoing paragraphs of this subsection or any other provision hereunder, the Seller shall not be deemed to be in default, breach or any other violation of its obligations hereunder by reason of any assumption of a Bulk Mortgage Loan by operation of law or any assumption which the Seller may be restricted by law from preventing, for any reason whatsoever. For purposes of this subsection, the term "assumption" is deemed to also include a sale of the Mortgaged Property subject to the Security Instrument that is not accompanied by an assumption or substitution of liability agreement.

## Satisfaction of Mortgages and Release of Mortgage Files

Upon the payment in full of any Bulk Mortgage Loan, or the receipt by the Seller of a notification that payment in full will be escrowed in a manner customary for such purposes, the Seller will immediately notify DB Structured Products, Inc. by a certification of a servicing officer of the Seller (a "Servicing Officer"), which certification shall include a statement to the effect that all amounts received or to be received in connection with such payment which are required to be deposited in the Custodial Account pursuant to the subsection entitled "Establishment of Custodial Accounts; Deposits in Custodial Accounts" have been or will be so deposited, and shall request execution of any document necessary to satisfy the Bulk Mortgage Loan and delivery to it of the portion of the Mortgage File held by DB Structured Products, Inc. or DB Structured Products, Inc.'s designee. Upon receipt of such certification and request, DB Structured Products, Inc., shall promptly release the related mortgage documents to the Seller and the Seller shall prepare and process any satisfaction or release. No expense incurred in connection with any instrument of satisfaction or deed of reconveyance shall be chargeable to the Custodial Account or DB Structured Products, Inc.

In the event the Seller satisfies or releases a Security Instrument without having obtained payment in full of the indebtedness secured by the Security Instrument or should it otherwise prejudice any right DB Structured Products, Inc. may have under the mortgage instruments, the Seller, upon written demand, shall remit to DB Structured Products, Inc. the then outstanding principal balance of the related Bulk Mortgage Loan by deposit thereof in the Custodial Account. The Seller shall maintain the fidelity bond insuring the Seller against any loss they may sustain with respect to any Bulk Mortgage Loan not satisfied in accordance with the procedures set forth herein.

From time to time and as appropriate for the servicing of the Bulk Mortgage Loan, including for this purpose collection under any Primary Insurance Policy or LPMI Policy, DB Structured Products, Inc. shall, upon request of the Seller and delivery to DB Structured Products, Inc. of a servicing receipt signed by a Servicing Officer, release the requested portion of the Mortgage File held by DB Structured Products, Inc. to the Seller. Such servicing receipt shall obligate the

Seller to return the related Security Instrument documents to DB Structured Products, Inc. when the need therefor by the Seller no longer exists, unless the Bulk Mortgage Loan has been liquidated and the Liquidation Proceeds relating to the Bulk Mortgage Loan have been deposited in the Custodial Account or the Mortgage File or such document has been delivered to an attorney, or to a public trustee or other public official as required by law, for purposes of initiating or pursuing legal action or other proceedings for the foreclosure of the Mortgaged Property either judicially or non-judicially, and the Seller has delivered to DB Structured Products, Inc. a certificate of a Servicing Officer certifying as to the name and address of the Person to which such Mortgage File or such document was delivered and the purpose or purposes of such delivery. Upon receipt of a certificate of a Servicing Officer stating that such Bulk Mortgage Loan was liquidated, the servicing receipt shall be released by DB Structured Products, Inc. to the Seller.

## Servicing Compensation

As compensation for its services hereunder, the Seller shall be entitled to withdraw from the Custodial Account or to retain from interest payments on the Bulk Mortgage Loans the amounts provided for as the Seller's Servicing Fee. Additional servicing compensation in the form of assumption fees, as provided in the subsection entitled "Assumption Agreements", and late payment charges or otherwise shall be retained by the Seller to the extent not required to be deposited in the Custodial Account. The Seller shall be required to pay all expenses incurred by it in connection with its servicing activities hereunder and shall not be entitled to reimbursement therefor except as specifically provided for.

## Notification of Adjustment

On each Adjustment Date, the Seller shall make interest rate adjustments for each Adjustable Rate Bulk Mortgage Loan in compliance with the requirements of the related Security Instrument and Mortgage Note. The Seller shall execute and deliver the notices required by each Security Instrument and Mortgage Note regarding interest rate adjustments. The Seller also shall provide timely notification to DB Structured Products, Inc. of all applicable data and information regarding such interest rate adjustments and the Seller's methods of implementing such interest rate adjustments. Upon the discovery by the Seller or DB Structured Products, Inc. that the Seller has failed to adjust a Mortgage Interest Rate or a Monthly Payment pursuant to the terms of the related Mortgage Note and Security Instrument, the Seller shall immediately deposit in the Custodial Account from its own funds the amount of any interest loss caused thereby without reimbursement therefor.

## Statement as to Compliance

(a) The Seller will deliver to DB Structured Products, Inc., not later than March 1 of each calendar year beginning in 2006, an Officers' Certificate (an "Annual Statement of Compliance")

stating, as to each signatory thereof, that (i) a review of the activities of the Seller during the preceding calendar year and of performance under this *Deutsche Bank Correspondent Lending Seller Guides* or other applicable servicing agreement has been made under such officers' supervision and (ii) to the best of such officers' knowledge, based on such review, the Seller has fulfilled all of its obligations under this *Deutsche Bank Correspondent Lending Seller Guides* or other applicable servicing agreement in all material respects throughout such year, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof. Copies of such statement shall be provided by DB Structured Products, Inc. to any Person identified as a prospective purchaser of the Bulk Mortgage Loans. In the event that the Seller has delegated any servicing responsibilities with respect to the Bulk Mortgage Loans to a Sub-Servicer, the Seller shall deliver an officer's certificate of the Sub-Servicer as described above as to each Sub-Servicer as and when required with respect to the Seller.

(b) With respect to any Bulk Mortgage Loans that are the subject of a Pass-Through Transfer, by March 1 of each calendar year beginning in 2006, an officer of the Seller shall execute and deliver an Officer's Certificate to DB Structured Products, Inc., any master servicer which is master servicing loans in connection with such transaction (a "Master Servicer") and any related depositor (a "Depositor") for the benefit of each such entity and such entity's affiliates and the officers, directors and agents of any such entity and such entity's affiliates, an Officer's Certificate in the form attached to the related Bulk Commitment Letter. In the event that the Seller has delegated any servicing responsibilities with respect to the Bulk Mortgage Loans to a Sub-Servicer, the Seller shall deliver an officer's certificate of the Sub-Servicer as described above as to each Sub-Servicer as and when required with respect to the Seller.

(c) The Seller shall indemnify and hold harmless the Master Servicer, the Depositor, DB Structured Products, Inc. (and if this *Deutsche Bank Correspondent Lending Seller Guides* has been assigned in whole or in part by DB Structured Products, Inc., any and all Persons previously acting as "DB Structured Products, Inc." hereunder), and their respective officers, directors, agents and affiliates, and such affiliates' officers, directors and agents (any such person, an "Indemnified Party") from and against any losses, damages, penalties, fines, forfeitures, reasonable legal fees and related costs, judgments and other costs and expenses arising out of or based upon a breach by the Seller or any of its officers, directors, agents or affiliates of its obligations under the subsection entitled "Statement as to Compliance", "Independent Public Accountants' Servicing Report" or "Assessment of Compliance with Servicing Criteria", or the negligence, bad faith

or willful misconduct of the Seller in connection therewith. If the indemnification provided for herein is unavailable or insufficient to hold harmless any Indemnified Party, then the Seller agrees that it shall contribute to the amount paid or payable by the Indemnified Party as a result of the losses, claims, damages or liabilities of the Indemnified Party in such proportion as is appropriate to reflect the relative fault of the Indemnified Party on the one hand and the Seller in the other in connection with a breach of the Seller's obligations under the subsection entitled "Statement as to Compliance", "Independent Public Accountants' Servicing Report" or "Assessment of Compliance with Servicing Criteria", or the Seller's negligence, bad faith or willful misconduct in connection therewith.

## Independent Public Accountants' Servicing Report

Not later than March 1 of each calendar year beginning in 2006, the Seller at its expense shall cause a firm of independent public accountants (which may also render other services to the Seller) which is a member of the American Institute of Certified Public Accountants to furnish a report (a "USAP Report") to DB Structured Products, Inc. or its designee to the effect that such firm has examined certain documents and records relating to the servicing of the Bulk Mortgage Loans under this *Deutsche Bank Correspondent Lending Seller Guides* or of mortgage loans under pooling and servicing agreements (including the Bulk Mortgage Loans and this *Deutsche Bank Correspondent Lending Seller Guides*) substantially similar one to another (such statement to have attached thereto a schedule setting forth the pooling and servicing agreements covered thereby) and that, on the basis of such examination conducted substantially in compliance with the Uniform Single Attestation Program for Mortgage Bankers, such firm confirms that such servicing has been conducted in compliance with such pooling and servicing agreements during the preceding calendar year, except for such significant exceptions or errors in records that, in the opinion of such firm, the Uniform Single Attestation Program for Mortgage Bankers requires it to report. Copies of such report shall be provided by DB Structured Products, Inc. to any Person identified as a prospective purchaser of the Bulk Mortgage Loans.

In the event that the Seller has delegated any servicing responsibilities with respect to the Bulk Mortgage Loans to a Sub-Servicer, the Seller shall provide a statement of the Sub-Servicer as described above as to each Sub-Servicer as and when required with respect to the Seller.

Notwithstanding the foregoing, the Seller's obligation to deliver a USAP Report under this subsection, as to the Seller or any Sub-Servicer, as to any calendar year, beginning with the report required in March 2007, shall be satisfied if an Assessment of Compliance and Attestation Report is delivered in compliance with the subsection entitled "Assessment of Compliance with Servicing Criteria" for such calendar year with respect to that entity.

## Assessment of Compliance with Servicing Criteria.

With respect to any Bulk Mortgage Loans that are the subject of a Pass-Through Transfer, the Seller shall deliver to DB Structured Products, Inc. or its designee on or before March 1 of each calendar year beginning in 2007, a report (an "Assessment of Compliance") reasonably satisfactory to DB Structured Products, Inc. regarding the Seller's assessment of compliance with the Servicing Criteria during the preceding calendar year as required by Rules 13a-18 and 15d-18 of the Exchange Act and Item 1122 of Regulation AB, which as of the date hereof, require a report by an authorized officer of the Seller that contains the following:

(a) A statement by such officer of its responsibility for assessing compliance with the Servicing Criteria applicable to the Seller;

(b) A statement by such officer that such officer used the Servicing Criteria to assess compliance with the Servicing Criteria applicable to the Seller;

(c) An assessment by such officer of the Seller's compliance with the applicable Servicing Criteria for the period consisting of the preceding calendar year, including disclosure of any material instance of noncompliance with respect thereto during such period, which assessment shall be based on the activities it performs with respect to asset-backed securities transactions taken as a whole involving the Seller, that are backed by the same asset type as the Bulk Mortgage Loans;

(d) A statement that a registered public accounting firm has issued an attestation report on the Seller's Assessment of Compliance for the period consisting of the preceding calendar year; and

(e) A statement as to which of the Servicing Criteria, if any, are not applicable to the Seller, which statement shall be based on the activities it performs with respect to asset-backed securities transactions taken as a whole involving the Seller, that are backed by the same asset type as the Bulk Mortgage Loans.

With respect to any Bulk Mortgage Loans that are the subject of a Pass-Through Transfer, on or before March 1 of each calendar year beginning in 2007, the Seller shall furnish to DB Structured Products, Inc. or its designee a report (an "Attestation Report") by a registered public accounting firm that attests to, and reports on, the Assessment of Compliance made by the Seller, as required by Rules 13a-18 and 15d-18 of the Exchange Act and Item 1122(b) of Regulation AB, which Attestation Report must be made in accordance with standards for attestation reports issued or adopted by the Public Company Accounting Oversight Board.

In the event that the Seller has delegated any servicing responsibilities with respect to the Bulk Mortgage Loans to a Sub-Servicer, the Seller shall provide an Assessment of Compliance of the Sub-Servicer and accompanying Attestation Report as described above as to each Sub-Servicer as and when required with respect to the Seller.

## Access to Certain Documentation

The Seller shall provide to the Office of Thrift Supervision, the FDIC and any other federal or state banking or insurance regulatory authority that may exercise authority over DB Structured Products, Inc. access to the documentation regarding the Bulk Mortgage Loans serviced by the Seller required by applicable laws and regulations. Such access shall be afforded without charge, but only upon reasonable request and during normal business hours at the offices of the Seller. In addition, access to the documentation will be provided to DB Structured Products, Inc. and any Person identified to the Seller by DB Structured Products, Inc. without charge, upon reasonable request during normal business hours at the offices of the Seller.

## Reports and Returns to be Filed by the Seller

The Seller shall file information reports with respect to the receipt of mortgage interest received in a trade or business, reports of foreclosures and abandonments of any Mortgaged Property and information returns relating to cancellation of indebtedness income with respect to any Mortgaged Property as required by Sections 6050H, 6050J and 6050P of the Code. Such reports shall be in form and substance sufficient to meet the reporting requirements imposed by such Sections 6050H, 6050J and 6050P of the Code.

## Servicing Transfer

At the end of the Interim Servicing Period, DB Structured Products, Inc., or its designee, shall assume all servicing responsibilities related to the Bulk Mortgage Loans and the Seller shall cease all servicing responsibilities related to the Bulk Mortgage Loans. During the Interim Servicing Period, the Seller shall, at its cost and expense, take such steps as may be necessary or appropriate to effectuate and evidence the transfer of the servicing of the related Bulk Mortgage Loans to DB Structured Products, Inc., or its designee. The Seller agrees to execute and deliver such instruments and take such actions as DB Structured Products, Inc., or its designee may, from time to time, reasonably request to carry out the servicing transfer.

## Superior Liens

With respect to each Second Lien Bulk Mortgage Loan, the Seller shall, for the protection of DB Structured Products, Inc.'s interest, file (or cause to be filed) of record a request for notice of any action by a superior lienholder where permitted by local law and whenever applicable state law does not require that a junior lienholder be named as a party defendant in foreclosure proceedings in order to foreclose such junior lienholder's equity of redemption. The Seller shall also notify any superior lienholder in writing of the existence of the Bulk Mortgage Loan and request notification of any action (as described below) to be taken against the Mortgagor or the Mortgaged Property by the superior lienholder.

If the Seller is notified that any superior lienholder has accelerated or intends to accelerate the obligations secured by the superior lien, or has declared or intends to declare a default under the superior mortgage or the promissory note secured thereby, or has filed or intends to file an election to have the Mortgaged Property sold or foreclosed, the Seller shall take whatever actions are necessary to protect the interests of DB Structured Products, Inc., and/or to preserve the security of the related Bulk Mortgage Loan, subject to any requirements applicable to real estate mortgage investment conduits pursuant to the Code. The Seller shall make a Servicing Advance of the funds necessary to cure the default or reinstate the superior lien if the Seller determines that such Servicing Advance is in the best interests of DB Structured Products, Inc. The Seller shall not make such a Servicing Advance except to the extent that it determines in its reasonable good faith judgment that such advance will be recoverable from Liquidation Proceeds on the related Bulk Mortgage Loan. The Seller shall thereafter take such action as is necessary to recover the amount so advanced.

If the Security Instrument relating to a Bulk Mortgage Loan had a lien senior to the Bulk Mortgage Loan on the related Mortgaged Property as of the related Cut-off Date, then the Seller, in its capacity as interim servicer, may consent to the refinancing of the prior senior lien, provided that the following requirements are met:

1.  The resulting Combined Loan-to-Value Ratio of such Bulk Mortgage Loan is no higher than the Combined Loan-to-Value Ratio prior to such refinancing; and

2.  The interest rate, or, in the case of an adjustable rate existing senior lien, the maximum interest rate, for the loan evidencing the refinanced senior lien is no more than 2.0% higher than the interest rate or the maximum interest rate, as the case may be, on the loan evidencing the existing senior lien immediately prior to the date of such refinancing; and

3.  The loan evidencing the refinanced senior lien is not subject to negative amortization.

## Compliance with REMIC Provisions

If a REMIC election has been made with respect to the arrangement under which the Bulk Mortgage Loans and REO Property are held, the Seller shall not take any action, cause the REMIC to take any action or fail to take (or fail to cause to be taken) any action that, under the REMIC Provisions, if taken or not taken, as the case may be, could (i) endanger the status of the REMIC as a REMIC or (ii) result in the imposition of a tax upon the REMIC (including but not limited to the tax on "prohibited transactions" as defined in Section 860F(a)(2) of the Code and the tax on "contributions" to a REMIC set forth in Section 860G(d) of the Code) unless the Seller has received an Opinion of Counsel (at the expense of the party seeking to take such action) to the effect that the contemplated action will not endanger such REMIC status or result in the imposition of any such tax.

## Additional Indemnification by the Seller

In addition to the indemnification provided in the subsection entitled "Remedies for Breach of Any Representation or Warranty", the Seller shall indemnify DB Structured Products, Inc. and hold DB Structured Products, Inc. harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that DB Structured Products, Inc. may sustain in any way related to the failure of the Seller to perform its obligations under this *Deutsche Bank Correspondent Lending Seller Guides* including but not limited to its obligation to service and administer the Bulk Mortgage Loans in strict compliance with the terms of this section entitled "Bulk Whole Loan Transfers" or any Reconstitution Agreement entered into pursuant to the subsection entitled "Removal of Bulk Mortgage Loans from Inclusion under this *Deutsche Bank Correspondent Lending Seller Guides* Upon a Whole Loan Transfer or a Pass-Through Transfer on One or More Reconstitution Dates". The indemnification obligation of the Seller set forth herein shall survive the termination of the Seller Agreement notwithstanding any applicable statute of limitations, which the Seller hereby expressly waives.

## Termination of Servicing

The respective obligations and responsibilities of the Seller, as servicer, shall terminate at the expiration of the Interim Servicing Period unless terminated on an earlier date at the option of DB Structured Products, Inc. or pursuant to the subsection entitled "Event of Defaults". Upon written request from DB Structured Products, Inc. in connection with any such termination, the Seller shall prepare, execute and deliver any and all documents and other instruments, place in DB Structured Products, Inc.'s possession all Mortgage Files, and do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Bulk Mortgage Loans and related documents, or otherwise, at the Seller's sole expense. The Seller agrees to cooperate with DB Structured Products, Inc. and such successor in effecting the termination of the Seller's responsibilities and rights hereunder as servicer, including, without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Seller to the related Custodial Account or Escrow Account or thereafter received with respect to the Bulk Mortgage Loans. The indemnification obligation of the Seller set forth herein shall survive the termination of the Seller Agreement notwithstanding any applicable statute of limitations, which the Seller hereby expressly waives.

## Successor to the Seller

Prior to termination of the Seller's responsibilities and duties pursuant to the subsections entitled "Removal of Bulk Mortgage Loans from Inclusion under the *Deutsche Bank Correspondent Lending Seller Guides* Upon a Whole Loan Transfer or a Pass-Through Transfer on One or More Reconstitution Dates", "Event of Defaults" or "Termination of Servicing" DB Structured Products, Inc.

shall (i) succeed to and assume all of the Seller's responsibilities, rights, duties and obligations hereunder, or (ii) appoint a successor which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Seller as servicer under this section entitled "Bulk Whole Loan Transfers". In the event that the Seller's duties, responsibilities and liabilities as servicer under this section entitled "Bulk Whole Loan Transfers" should be terminated pursuant to the aforementioned subsections, the Seller shall discharge such duties and responsibilities during the period from the date it acquires knowledge of such termination until the effective date thereof with the same degree of diligence and prudence which it is obligated to exercise under this section entitled "Bulk Whole Loan Transfers", and shall take no action whatsoever that might impair or prejudice the rights or financial condition of DB Structured Products, Inc. or such successor. The termination of the Seller as servicer pursuant to the aforementioned subsections shall not become effective until a successor shall be appointed and shall in no event relieve the Seller of the representations and warranties made in the subsections entitled "Seller Representations and Warranties", "Representations and Warranties Regarding Loans", "Additional Representations and Warranties Respecting the Seller" and "Additional Representations and Warranties Regarding the Bulk Mortgage Loans" and the remedies available to DB Structured Products, Inc. hereunder, it being understood and agreed that such provisions shall be applicable to the Seller notwithstanding any such resignation or termination of the Seller, or the termination of the Seller Agreement.

Any successor appointed as provided herein shall execute, acknowledge and deliver to the Seller and to DB Structured Products, Inc. an instrument accepting such appointment, whereupon such successor shall become fully vested with all the rights, powers, duties, responsibilities, obligations and liabilities of the Seller, with like effect as if originally named as a party to the Seller Agreement provided, however, that such successor shall not assume, and the Seller shall indemnify such successor for, any and all liabilities arising out of the Seller's acts as servicer. Any termination of the Seller as servicer pursuant to the subsections entitled "Removal of Bulk Mortgage Loans from Inclusion under the *Deutsche Bank Correspondent Lending Seller Guides* Upon a Whole Loan Transfer or a Pass-Through Transfer on One or More Reconstitution Dates", "Event of Defaults" or "Termination of Servicing" shall not affect any claims that DB Structured Products, Inc. may have against the Seller arising prior to any such termination or resignation or remedies with respect to such claims.

The Seller shall timely deliver to the successor the funds in the related Custodial Account, REO Account and the related Escrow Account and the Mortgage Files and related documents and statements held by it hereunder and the Seller shall account for all funds. The Seller shall execute and deliver such instruments and do such other things all as may reasonably be required to more fully and definitely vest and confirm in the successor all such rights, powers, duties, responsibilities, obligations and liabilities of the Seller as servicer. The successor shall make arrangements as it may deem appropriate to reimburse the Seller for amounts the Seller actually expended as servicer pursuant to this section entitled "Bulk Whole Loan Transfers" which the

successor is entitled to retain hereunder and which would otherwise have been recovered by the Seller pursuant to this section entitled "Bulk Whole Loan Transfers" but for the appointment of the successor servicer.

## Event of Defaults

In addition to the Events of Seller Default set forth in the subsection entitled "Seller Default", any of the following events shall constitute an Event of Default:

(i) Any failure by the Seller to remit to DB Structured Products, Inc. any payment required to be made hereunder which continues unremedied for a period of one Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Seller by DB Structured Products, Inc.; or

(ii) Failure on the part of the Seller duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Seller set forth herein which continues unremedied for a period of thirty days (except that such number of days shall be fifteen in the case of a failure to pay any premium for any insurance policy required to be maintained hereunder) after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Seller by DB Structured Products, Inc.; or

(iii) Failure by the Seller to be in compliance with the "doing business" or licensing laws of any jurisdiction where a Mortgaged Property is located; or

(iv) The Seller attempts to assign its right to servicing compensation hereunder or the Seller attempts, without the consent of DB Structured Products, Inc., to sell or otherwise dispose of all or substantially all of its property or assets or to assign the Seller Agreement or the servicing responsibilities hereunder or to delegate its duties hereunder or any portion thereof; or

(v) Failure by the Seller to duly perform, within the required time period, its obligations under the subsections entitled "Statement as to Compliance" or "Independent Public Accountants' Servicing Report" or "Assessment of Compliance with Servicing Criteria" which failure continues unremedied for a period of ten (10) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Seller by any party to the Seller Agreement or by any master servicer responsible for master servicing the Bulk Mortgage Loans pursuant to a securitization of such Bulk Mortgage Loans;

Then, and in each and every such case, so long as an Event of Default shall not have been remedied, DB Structured Products, Inc., by notice in writing to the Seller, may, in addition to whatever rights DB Structured Products, Inc. may have at law or in equity to damages, including injunctive relief and specific performance, terminate all the rights and obligations of the Seller

as servicer hereunder. On or after the receipt by the Seller of such written notice, all authority and power of the Seller to service the Bulk Mortgage Loans hereunder shall on the date set forth in such notice pass to and be vested in the successor appointed pursuant to the subsection entitled "Successor to the Seller".

If any of the Bulk Mortgage Loans are MERS Loans, in connection with the termination or resignation (as described in the subsection entitled "Seller Not To Resign") of the Seller hereunder, either (i) the successor servicer shall represent and warrant that it is a member of MERS in good standing and shall agree to comply in all material respects with the rules and procedures of MERS in connection with the servicing of the Bulk Mortgage Loans that are registered with MERS, or (ii) the Seller shall cooperate with the successor company either (x) in causing MERS to execute and deliver an Assignment of Mortgage in recordable form to transfer the Security Instrument from MERS to DB Structured Products, Inc. and to execute and deliver such other notices, documents and other instruments as may be necessary or desirable to effect a transfer of such Bulk Mortgage Loan or servicing of such Bulk Mortgage Loan on the MERS System to the successor company or (y) in causing MERS to designate on the MERS System the successor company as the servicer of such Bulk Mortgage Loan.

Seller shall notify DB Structured Products, Inc. within one (1) Business Day upon an occurrence of any of the events listed in the subsection entitled "Disqualification or Suspension".

## Waivers

No term or provision may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

Deutsche Bank

This page is intentionally blank